■ TARIK FARAG, Appellant, v SAHAR FARAG, Respondent. [772 NYS2d 368]—

In an action for a divorce and ancillary relief, the plaintiff appeals, as limited by his brief, from stated portions of (1) a decision of the Supreme Court, Suffolk County (Bivona, J.), dated November 4, 2002, and (2) a judgment of the same court entered March 31, 2003, which, after a nonjury trial, inter alia, determined that the former marital residence was marital property subject to equitable distribution and awarded the defendant $114,500, representing 50% of the appraised value of the former marital residence, minus $3,000, constituting her share of the marital debt.

Ordered that the appeal from the decision is dismissed, as no appeal lies from a decision (see Schicchi v Green Constr. Corp., 100 AD2d 509 [1984]); and it is further,

Ordered that the judgment is affirmed insofar as appealed from; and it is further,

Ordered that one bill of costs is awarded to the defendant.

The amount of maintenance awarded is a matter committed to the sound discretion of the trial court and every case must be determined on its unique facts (see Chalif v Chalif, 298 AD2d 348 [2002]; Mazzone v Mazzone, 290 AD2d 495 [2002]; Damato v Damato, 215 AD2d 348 [1995]). The trial court is required to consider the parties' pre-separation standard of living in

determining the appropriate amount and duration of maintenance (*see Hartog v Hartog,* 85 NY2d 36 [1995]). The trial court must also consider the reasonable needs of the recipient spouse and the pre-separation standard of living in the context of the other factors, and then, in its discretion, fashion a fair and equitable maintenance award (*see* Domestic Relations Law § 236 [B] [6] [a] [1]-[11]; *Hartog v Hartog, supra* at 52).

The plaintiff's liquid assets were unknown and he was less than forthcoming with evidence as to his monthly obligations or earnings. Therefore, the trial court properly took into consideration those factors necessary to compute the plaintiff's maintenance obligation from the figures available to it. Thus, the trial court providently exercised its discretion in requiring the plaintiff to pay the defendant maintenance of $100 per week for a period of six years. Moreover, the trial court also properly calculated the amount of child support given the figures available. The trial court properly applied the statutory percentage set forth in the Child Support Standards Act to the combined parental income up to $80,000 (*see* Domestic Relations Law § 240 [1-b] [b] [3] [iii]) and the basic child support award was just and appropriate.

"In identifying nothing less than 'all property' acquired during the marriage as marital property [Domestic Relations Law § 236 (B) (1) (c)] evinces an unmistakable intent to provide each spouse with a fair share of things of value that each helped to create and expects to enjoy at a future date (*see, DeJesus v DeJesus,* 90 NY2d 643 [1997])" (*DeLuca v DeLuca,* 97 NY2d 139, 144 [2001]). Since the former marital residence was purchased during the marriage the trial court properly deemed it to be marital property subject to equitable distribution. The party seeking to overcome the marital property presumption, here the plaintiff, has the burden of proving that the property in dispute is separate property (*see Barone v Barone,* 292 AD2d 481 [2002]). Given that the term "separate property" is to be construed narrowly (*see* Domestic Relations Law § 236 [B] [1] [d]; *Price v Price,* 69 NY2d 8 [1986]; *Majauskas v Majauskas,* 61 NY2d 481 [1984]; *Leeds v Leeds,* 281 AD2d 601 [2001]), and that the plaintiff failed to trace the sources of money he claimed were the separate property used to purchase the former marital residence, the trial court was justified in holding that the plaintiff failed to meet his burden and in treating the former marital residence as marital property subject to equitable distribution (*see Barone v Barone, supra; Harris v Harris,* 242 AD2d 558 [1997]; *Saasto v Saasto,* 211 AD2d 708 [1995]; *Sarafian v Sarafian,* 140 AD2d 801 [1988]).

We further reject the plaintiff's contention that the trial court should have recognized the ex parte Egyptian "Bill of Revocable Divorce" pursuant to the legal concept of comity. It is axiomatic that comity should be extended to uphold the validity of a foreign divorce decree absent a showing of fraud in its procurement or that recognition of the judgment would do violence to some strong public policy of the state (*see Matter of Gotlib v Ratsutsky,* 83 NY2d 696 [1994]; *Greschler v Greschler,* 51 NY2d 368 [1980]; *Azim v Saidazimova,* 280 AD2d 566 [2001]). The general rule is that a "foreign divorce decree obtained on the ex parte petition of a spouse present but not domiciled in the foreign country will not be recognized in New York where the other nonresident spouse does not appear and is not served with process" (*Steffens v Steffens,* 238 AD2d 404, 405 [1997] [internal quotation marks omitted]; *see Rosenbaum v Rosenbaum,* 309 NY 371 [1955]). It was undisputed that the plaintiff never informed the defendant that he was traveling to Egypt to obtain the foreign divorce decree. Furthermore, there is no evidence in the record that the plaintiff followed the proper procedures for obtaining the foreign divorce decree. Thus, contrary to the plaintiff's contention, the trial court properly refused to recognize the foreign divorce decree pursuant to the concept of comity. Moreover, the trial court properly rejected the plaintiff's argument that the Egyptian "Marriage Deed" governed the equitable distribution of the parties' marital assets or the maintenance obligations in this case. There was no proof that the Marriage Deed was duly executed pursuant to Domestic Relations Law § 236 (B) (3) and nothing in that document speaks to the issues of equitable distribution of assets or maintenance obligations in the event of a divorce. The plain reading of the Marriage Deed merely provides that pursuant to a dowry provision, the plaintiff was obligated to pay the defendant, as consideration for the arranged marriage, the sum of 10,000 Egyptian Pounds at the time of marriage and the "deferred" sum of 10,000 Egyptian Pounds in the event of "divorce or death." While similar marriage documents have been upheld and their secular terms deemed enforceable as a contractual obligation, there is no authority to support the plaintiff's contention that this dowry provision, as written, governed the equitable distribution of the parties' assets or maintenance obligations or waived the defendant's rights thereto in this divorce action (*see Avitzur v Avitzur,* 58 NY2d 108 [1983], *cert denied,* 464 US 817 [1983]; *Aziz v Aziz,* 127 Misc 2d 1013 [1985]; *cf. Matter of Sherif v Sherif,* 76 Misc 2d 905 [1974]; *see generally W.W.W. Assoc. v Giancontieri,* 77 NY2d 157 [1990]).

The plaintiff's remaining contentions are without merit. Altman, J.P., Cozier, Mastro and Rivera, JJ., concur.