■ CHAIM SIEGER, Respondent, v HELEN SIEGER, Appellant. [829 NYS2d 649]—

In an action for a divorce and ancillary relief, the wife appeals, as limited by her brief, from stated portions of a judgment of the Supreme Court, Kings County (Sunshine, J.), dated August 11, 2005, as, upon a decision of the same court dated June 29, 2005, made after a nonjury trial, awarded the husband a divorce and directed the wife to pay him a distributive award in the sum of $8,497,697.

Ordered that the judgment is modified, on the law and the facts, by deleting the provision thereof directing the wife to pay the husband a distributive award in the sum of $8,497,697; as

so modified, the judgment is affirmed insofar as appealed from, without costs or disbursements, and the matter is remitted to the Supreme Court, Kings County, for further proceedings consistent herewith.

The parties Chaim Sieger (hereinafter the husband) and Helen Sieger (hereinafter the wife), both orthodox Jews, were married in 1972. The two children born of the marriage are emancipated. During the course of the marriage, the parties amassed considerable wealth. The parties' wealth derived from the wife's parents, who were in the nursing home business. On December 4, 1995, the wife left the marital residence. In 1997, the husband obtained a "heter" from a rabbinical court, which allowed him to remarry without first giving the wife a "get" (*see Sieger v Union of Orthodox Rabbis of U.S. & Can.*, 1 AD3d 180 [2003]). On March 2, 1998, the husband commenced this action, inter alia, for a divorce on the ground of abandonment. At issue on appeal are the alleged barriers to the wife's remarriage due to the existence of the "heter" and the equitable distribution of the parties' assets.

Contrary to the wife's contention, the judgment should not be reversed due to noncompliance with Domestic Relations Law § 253 (3), which provides that "[n]o final judgment of . . . divorce shall . . . be entered unless the plaintiff shall have filed and served a sworn statement: (i) that to the best of his or her knowledge, he or she has, prior to the entry of such final judgment, taken all steps solely within his or her power to remove all barriers to the defendant's remarriage following the . . . divorce." The evidence revealed that the husband at various times after obtaining the "heter" was willing to give the wife a "get," or religious divorce, but that the wife refused to accept a "get" unless the husband disavowed statements he made concerning her in order to obtain the "heter." It is the wife's contention that the "heter" has the practical effect of preventing her remarriage even were she to receive a "get." The wife sought various forms of relief in connection with the "heter," which the Supreme Court declined to grant.

The husband complied with Domestic Relations Law § 253 (3) inasmuch as he remains prepared to give his wife a religious divorce. The legislative intent of Domestic Relations Law § 253 (3) was principally to prevent the husband in the case of a Jewish divorce from using the denial of a "get" as a form of economic coercion in a civil divorce action (*see Perl v Perl*, 126 AD2d 91, 94-95 [1987]; Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, CPLR C253:1, at 716). Here, no such form of economic coercion is being exerted

inasmuch as it is the wife who refuses to accept a "get." Insofar as the wife claims that the "heter" has the practical effect of preventing her remarriage, this Court is without jurisdiction to consider this issue because to do so would require the court to review and interpret religious doctrine and resolve the parties' religious dispute, which the court is proscribed from doing under the First Amendment entanglement doctrine (*see First Presbyt. Church of Schenectady v United Presbyt. Church in U.S. of Am.*, 62 NY2d 110, 116 [1984], *cert denied* 469 US 1037 [1984]; *Sieger v Union of Orthodox Rabbis of U.S. & Can., supra*; *Sieger v Sieger*, 297 AD2d 33 [2002]). Further, this Court's jurisdiction to review the "heter" issue is specifically proscribed under Domestic Relations Law § 253 (9), which provides that "[n]othing in this section shall be construed to authorize any court to inquire into or determine any ecclesiastical or religious issue."

The wife's contention that she is entitled to additional discovery and that the appraisals are tainted due to the involvement of a certain special discovery referee in this case could have been raised on the wife's prior appeals from the orders of the same court dated April 15, 2004, and July 30, 2004, denying her motions. On February 22, 2005, those appeals were dismissed for lack of prosecution. The dismissal of those appeals constituted an adjudication on the merits with respect to all issues which could have been raised, and we decline to review those issues on this appeal (*see Rubeo v National Grange Mut. Ins. Co.*, 93 NY2d 750, 755-756 [1999]; *Bray v Cox*, 38 NY2d 350 [1976]; *Silvestre v Shelley*, 30 AD3d 401 [2006]).

The Supreme Court, in a thorough and well reasoned decision, properly found that the Kingsbridge Heights Rehabilitation & Care Center, Inc. (hereinafter Kingsbridge), was marital property. The wife, who had the burden of overcoming the marital property presumption, failed to meet her burden (*see D'Angelo v D'Angelo*, 14 AD3d 476, 477 [2005]; *Palumbo v Palumbo*, 10 AD3d 680, 681 [2004]; *Farag v Farag*, 4 AD3d 502, 504 [2004]). Given that the term "separate property" is to be narrowly construed (*see* Domestic Relations Law § 236 [B] [1] [d]; *Price v Price*, 69 NY2d 8 [1986]; *Majauskas v Majauskas*, 61 NY2d 481 [1984]; *D'Angelo v D'Angelo, supra*), and that the wife failed to establish that the funds used to purchase Kingsbridge were a gift from her family to her *alone* (*see Ackley v Ackley*, 100 AD3d 153, 155 [1984]), the Supreme Court properly found Kingsbridge to be marital property subject to equitable distribution (*see Antes v Antes*, 304 AD2d 597 [2003]; *Haynes v Toma*, 300 AD2d 357 [2002]; *Icart v Icart*, 186 AD2d 918, 919 [1992]).

The wife's contention that the Supreme Court erred in selecting December 31, 1998, as the valuation date for the nursing home assets is without merit. There is also no merit to the wife's contention that it was error for the court-appointed neutral appraiser to value Kingsbridge as a going concern based on an estimated income stream, less estimated expenses, and capitalizing that value at a rate of 13.5%.

The Supreme Court's determination that Kingsbridge's value was $16,822,904 is not, however, supported by the record. In making its determination, the court accepted the methodology utilized by the court-appointed forensic evaluator who had recognized expertise in evaluating nursing homes. However, the court made several adjustments from the predicate assumptions of that evaluation and performed its own mathematical calculations as to the value of the business, excluding the real estate on which it was located. We are unable to discern from the record how the court arrived at the figure of $7,206,778 as Kingsbridge's operating income for 1998, or what mathematical calculation was utilized in arriving at the values of the various components of that calculation. The court made downward adjustments for rent and to reflect a recoupment resulting from a State Department of Health audit which concluded that there had been an overpayment, and also made adjustments for management fees over and above a certain "other expense" category, which appears may have included a portion of or all of the same management costs. Additionally, the court concluded that certain bank accounts of Kingsbridge were marital property, and it is not clear whether such accounts were properly treated in the valuation of Kingsbridge. Neither the court-appointed forensic evaluator nor the defendant's expert made any evaluation of the impact of the State audit on their respective valuations or were able to opine as to the propriety of the adjustments made by the court and the impact such adjustments would have on the valuation of Kingsbridge or the proper treatment of Kingsbridge's various bank accounts. To the extent that the bank accounts were properly determined to be part of the marital estate, they must be considered as a component of the valuation of Kingsbridge. Accordingly, we remit the matter to the Supreme Court, Kings County, for the sole purpose of either supplementing its decision to set forth with specificity the mathematical calculations employed and the basis therefor in light of this decision, or determining de novo the proper valuation of Kingsbridge in light of the factors enumerated herein, and for the entry of an appropriate amended judgment thereafter.

The wife's remaining contentions are without merit. Mastro,

J.P., Krausman, Fisher and Lifson, JJ., concur. [*See* 8 Misc 3d 1029(A), 2005 NY Slip Op 51348(U) (2005).]