Peters, P.J.
Cross appeal from a judgment of the Supreme *1186 Court (Lambert, J.), entered September 4, 2014 in Delaware County, ordering, among other things, equitable distribution of the parties’ marital property, upon decisions of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 2002. The husband commenced this action in 2010 and, after the parties stipulated to the grounds for divorce, a nonjury trial was conducted on the issues of equitable distribution and maintenance. Supreme Court granted the divorce, distributed the marital property and directed the husband to pay the wife $500 a month in spousal maintenance for 26 months and $5,000 in counsel fees. This cross appeal ensued.
Both parties challenge the award of maintenance; the wife argues that the amount and/or duration of the award is insufficient, while the husband contends that any award of maintenance was error. “The amount and duration of a maintenance award are addressed to the sound discretion of the trial court, and will not be disturbed provided that the statutory factors and the parties’ predivorce standard of living are considered” (Cornish v Eraca-Cornish, 107 AD3d 1322, 1324 [2013] [internal quotation marks, brackets and citations omitted]; see Domestic Relations Law § 236 [B] [6]; Orioli v Orioli, 129 AD3d 1154, 1155 [2015]). The court need not analyze and apply each and every factor set forth in the statute, but “must provide a reasoned analysis of the factors it ultimately relies upon in awarding maintenance” (Curley v Curley, 125 AD3d 1227, 1228 [2015]; see Vantine v Vantine, 125 AD3d 1259, 1261 [2015]; McAteer v McAteer, 294 AD2d 783, 784 [2002]).
In fashioning its maintenance award, Supreme Court noted the length of the marriage, that the parties have no children in common and were both in relatively good health. The wife has a Bachelor’s degree, has held various clerical and administrative jobs during the marriage and was earning roughly $30,000 at the time of the trial. The husband possesses a high school education and has worked as a self-employed contractor since 1994. Although the husband claimed an annual adjusted gross income of $20,399 for the preceding tax year, Supreme Court found him incredible in the reporting of his income and assets, noting that he had actively concealed financial information and assets and claimed expenses that exceeded his purported income. Deferring to the court’s evaluation of the husband’s credibility on the issue of his income and assets (see Johnson v Chapin, 49 AD3d 348, 360-361 [2008], mod 12 NY3d 461 [2009]), and considering the predivorce standard of living and the relatively short-term nature of the award, we cannot *1187 conclude that the award of maintenance was an abuse of discretion (see Quarty v Quarty, 96 AD3d 1274, 1277 [2012]; Burtchaell v Burtchaell, 42 AD3d 783, 784-785 [2007]; Walters v Walters, 252 AD2d 775, 775 [1998]).
The parties also dispute several aspects of Supreme Court’s equitable distribution award, which “will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors” (Vertucci v Vertucci, 103 AD3d 999, 1001 [2013] [internal quotation marks and citations omitted]; see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 420 [2009]; Mula v Mula, 131 AD3d 1296, 1298 [2015]). We first address the marital residence which, having been purchased by the husband prior to the marriage, was the husband’s separate property (see Domestic Relations Law § 236 [B] [1] [d] [1]; Ceravolo v DeSantis, 125 AD3d 113, 115-116 [2015]). However, “any appreciation in the value of separate property due to the contributions or efforts of the nóntitled spouse will be considered marital property” (Johnson v Chapin, 12 NY3d 461, 466 [2009]; see Domestic Relations Law § 236 [B] [1] [d] [3]; Macaluso v Macaluso, 124 AD3d 959, 960 [2015]; Biagiotti v Biagiotti, 97 AD3d 941, 943 [2012]). The wife, as the nontitled spouse, bore the burden of establishing that any increase in the value of the separate property was due at least in part to her contributions or efforts (see Macaluso v Macaluso, 124 AD3d at 962; Albanese v Albanese, 69 AD3d 1005, 1006 [2010]; Bonanno v Bonanno, 57 AD3d 1260, 1261 [2008]).
While there is no dispute that substantial improvements had been made to the marital home, the parties presented sharply conflicting testimony as to both when those improvements were made and the wife’s overall contributions to the home and the marriage. The husband testified that, after he acquired his former spouse’s interest in the property in 1999, he spent considerable time and effort renovating the marital residence by, among other things, constructing an addition on the house, building a garage, landscaping and installing a new roof, siding, windows, a heating system and a deck. According to the husband, the improvements to the marital home were “pretty much finished” at the time he and the wife married in August 2002. He noted that some additional work was performed after the wife moved into the marital residence, but claimed that the wife did not assist in making any of the improvements and that he paid for them with profits earned through his construction business and other personal endeavors. The wife, on the other hand, claimed that the vast majority of the improvements testified to by the husband were made by the parties *1188 during the marriage. She explained that she and the husband spent numerous weekends renovating the marital residence and, while acknowledging that she did not have the skills to complete most of the construction work done to the home, testified that she would help purchase and obtain the required materials, request estimates, compare prices of materials and otherwise assist the husband with whatever he needed. The wife testified further that, in addition to working full time, she was the primary caretaker of the marital residence and contributed to the household by doing all of the cooking, cleaning and laundering. According appropriate deference to Supreme Court’s credibility assessments and its substantial discretion in fashioning an award (see Vantine v Vantine, 125 AD3d at 1261; Lurie v Lurie, 94 AD3d 1376, 1378 [2012]), we find no basis upon which to disturb its determination that the appreciation in the value of the marital residence was attributable to the joint efforts of the parties and that the wife was entitled to 50% of that increase in value (see Lowe v Lowe, 123 AD3d 1207, 1209 [2014]; Scher v Scher, 91 AD3d 842, 845 [2012]; Miller v Miller, 4 AD3d 718, 719 [2004]).
We do find merit, however, in the wife’s contention that Supreme Court erred in determining the amount of the marital home’s appreciation. The parties submitted competing appraisals valuing the property both on the date of the marriage and the date of commencement of this action. In determining the appreciation, Supreme Court averaged the values set forth in the parties’ respective date of marriage appraisals, averaged the values set forth in their date of commencement appraisals, and then subtracted the former figure from the latter. While this Court has declined to impose an absolute proscription against the procedure of averaging competing appraisals in valuing a marital asset (see Hoyt v Hoyt, 166 AD2d 800, 802 [1990]), blindly employing such a technique without articulating a reason for doing so cannot be condoned (see Domestic Relations Law § 236 [B] [5] [g]; Antinora v Antinora, 125 AD3d 1336, 1339 [2015]; Gainer v Gainer, 111 AD2d 308, 309 [1985]; cf. Latham Holding Co. v State of New York, 16 NY2d 41 [1965]). Mechanically averaging values set forth in competing appraisals may well result in a speculative valuation that is not founded in economic reality (see Morales v Morales, 230 AD2d 895, 896 [1996], lv denied 90 NY2d 804 [1997]; Iwahara v Iwahara, 226 AD2d 346, 348 [1996]; Martin v Martin, 200 AD2d 304, 308 [1994]; Gainer v Gainer, 111 AD2d at 309).
Here, Supreme Court failed to set forth any reason for rejecting the valuations advanced by the parties’ appraisers. Indeed, *1189 the court’s decision to average the appraisals was particularly problematic given the circumstances present here. The wife’s date of marriage appraisal valued the marital home at $36,000 based on her representations that the substantial improvements at issue were performed during the marriage, while the husband’s appraisal valued it at $140,000 based upon his representations that such improvements were performed prior to the marriage.* Thus, the determination as to the value of the marital home on the date of the marriage necessarily hinged upon the resolution of factual disputes and issues of credibility, which could not be accomplished by simply averaging the parties’ wildly divergent appraisals. In its decision, Supreme Court found that “significant improvements” were made to the marital residence during the marriage, but it is not clear to what extent the court accepted the wife’s testimony concerning the improvements that were allegedly made during that period. While our authority in matters such as this are as broad as that of Supreme Court (see Quarty v Quarty, 74 AD3d 1516, 1517 [2010]; Dewitt v Sheiness, 42 AD3d 776, 777 [2007]), we deem it appropriate to vacate the distributive award concerning the appreciation of the marital residence and remit the matter to Supreme Court for appropriate findings of fact and conclusions of law on that issue (see Domestic Relations Law § 236 [B] [5] [g]; Antinora v Antinora, 125 AD3d at 1339). Inasmuch as Supreme Court’s erroneous valuation of the appreciation of that asset, as well as its improper valuation of an additional parcel of real property owned by the parties (see infra), may have affected its overall scheme of distribution as well as its calculation of maintenance, the court should also reconsider these interdependent issues upon remittal (see Macaluso v Macaluso, 124 AD3d at 962; McAteer v McAteer, 294 AD2d at 785).
Supreme Court’s valuation of real property purchased by the parties during the marriage (hereinafter the Cooks Falls Road property) suffered from the same infirmity. Thus, this portion of the award must likewise be vacated and appropriate findings and conclusions as to the value of the Cooks Falls Road property shall be made by Supreme Court upon remittal (see Domestic Relations Law § 236 [B] [5] [g]). With regard to this property, the husband agues that he is entitled to a separate property credit in the amount of $6,800 used as part of the down payment, claiming that such funds were a gift to him from his mother. Although a party is generally entitled to a *1190 credit for any contribution of separate property toward the purchase of a marital asset (see Fields v Fields, 15 NY3d 158, 167 [2010]; Beardslee v Beardslee, 124 AD3d 969, 969 [2015]; Murray v Murray, 101 AD3d 1320, 1321 [2012], lv dismissed 20 NY3d 1085 [2013]), the husband failed to present any evidence establishing that his mother’s down payment contribution was a gift and, even if it was, that such funds were a gift to him alone (see Patete v Rodriguez, 109 AD3d 595, 598 [2013]; Sieger v Sieger, 37 AD3d 585, 587 [2007]; Haynes v Toma, 300 AD2d 357, 357 [2002]).
The husband also contends that Supreme Court improperly awarded the wife half of the value of certain of his business assets. As the husband represented to the court in his statement of proposed disposition that two Ford vehicles and a backhoe were marital property subject to equitable distribution, he cannot now be heard to complain that the court erred in not classifying those assets as separate property (see Sawyer v Sawyer, 268 AD2d 929, 929 [2000]; Holcomb v Holcomb, 148 AD2d 915, 916 [1989]). As for a compressor, a Miter saw, a pressure washer, a generator and certain tools contained in a cargo van — all of which were acquired during the marriage — no evidence was presented that these items were acquired by defendant’s business with separate property. Thus, the husband failed to rebut the presumption that such assets constitute marital property (see Domestic Relations Law § 236 [B] [1] [c]; Fields v Fields, 15 NY3d at 162; Price v Price, 69 NY2d 8, 15 [1986]; see also Zufall v Zufall, 109 AD3d 1135, 1137-1138 [2013], lv denied 22 NY3d 859 [2014]).
We reach a different conclusion as to the husband’s Chase Bank checking account. Such business account, which was held by “Gregg R. Robinson d/b/a Robinson Construction” and established prior to the marriage, was the husband’s separate property (see Domestic Relations Law § 236 [B] [1] [d] [1]). The husband testified, without contradiction, that the wife did not make any deposits into the business account and there was no evidence establishing that the husband’s business funds were otherwise commingled with marital property. The fact that the husband may have made withdrawals from the business account to pay marital expenses did not change the character of the account (see Chernoff v Chernoff, 31 AD3d 900, 903 [2006]; Spencer v Spencer, 230 AD2d 645, 647 [1996]; Feldman v Feldman, 194 AD2d 207, 216 [1993]). Accordingly, the husband’s Chase business checking account was not marital property subject to equitable distribution, and Supreme Court erred in awarding the wife 50% of the balance of such account.
*1191 Supreme Court did not abuse its discretion in refusing to allocate between the parties certain debts and finance charges incurred on credit cards held in the wife’s name, as the wife failed to present sufficient evidence that such debts were used for marital expenses (see Guy v Guy, 118 AD3d 1352, 1353 [2014]; Wexler v Wexler, 34 AD3d 458, 460 [2006], lv dismissed and denied 8 NY3d 1007 [2007]; Cobeche v Cobeche, 10 AD3d 441, 441 [2004]). Nor did Supreme Court err in failing to enforce a stipulation entered into by the parties during the course of a separate Family Court proceeding whereby the husband agreed to pay the wife $500 a month during the pendency of this action. “ [W]ithout proof in the record of a valid opt-out agreement [as required by Domestic Relations Law § 236 (B) (3)], the oral stipulation is unenforceable” in the context of this matrimonial action (Birr v Birr, 70 AD3d 1221, 1223 [2010]; see Harbour v Harbour, 243 AD2d 947, 949 [1997], lv dismissed 92 NY2d 845 [1998]; Timperio v Timperio, 232 AD2d 857, 859 [1996]). Finally, considering “the financial circumstances of both parties together with all the other circumstances of the case” (Johnson v Chapin, 12 NY3d at 467 [internal quotation marks and citations omitted]; see Domestic Relations Law § 237 [a]), we find that Supreme Court providently exercised its discretion in directing the husband to contribute $5,000 towards the wife’s counsel fees (see Roberto v Roberto, 90 AD3d 1373, 1376-1377 [2011]; Johnson v Chapin, 49 AD3d at 361-362).
The parties’ remaining contentions, to the extent that they are properly before us, are either lacking in merit or do not warrant a further modification or reversal of the judgment.
Lahtinen, Garry and Clark, JJ., concur. Ordered that the judgment is modified, on the law, without costs, by reversing so much thereof as awarded defendant (1) $42,250 and $32,000 representing the appreciation of the marital residence and the value of the Cooks Falls Road property, respectively, and (2) one half of the balance of plaintiff’s Chase Bank business checking account; matter remitted to the Supreme Court for further proceedings not inconsistent with this Court’s decision; and, as so modified, affirmed.

 By averaging the appraisals, Supreme Court determined the value of the marital residence on the date of marriage to be $88,000.