# State of New York
## Supreme Court, Appellate Division
### Third Judicial Department

Decided and Entered:  January 12, 2017                523026
_____

JANELLE R. PFISTER,

                    Respondent,

        v                                  MEMORANDUM AND ORDER

ROBERT D. PFISTER JR.,

                    Appellant.
_____

Calendar Date:  November 16, 2016

Before:  Egan Jr., J.P., Lynch, Rose, Clark and Aarons, JJ.

                    _____

        Law Office of Stephen W. Rossi, Saratoga Springs (Stephen
W. Rossi of counsel), for appellant.

        Frank M. Putorti Jr., PC, Schenectady (Andrew J. Healey of
counsel), for respondent.

                    _____

Lynch, J.

        Appeal from a judgment of the Supreme Court (Powers, J.),
entered June 18, 2015 in Albany County, ordering, among other
things, equitable distribution of the parties' marital property,
upon a decision of the court.

        Plaintiff (hereinafter the wife) and defendant (hereinafter
the husband) were married in 1998 and have three children (born
in 2000, 2003 and 2010).  In 2008, the wife commenced and later
discontinued an action for divorce before commencing this action
in November 2011.  The parties stipulated to the grounds for
divorce and to the terms of custody and parenting time.  Supreme
Court issued an interim order directing, among other things, that
the husband pay the carrying charges on the marital residence but
he did not comply.  Also during the pendency of this action, each

party sought and was granted a separate discharge of various debts pursuant to chapter 7 of the Bankruptcy Code and a foreclosure action was commenced with respect to the marital residence. During the ensuing nonjury trial, the parties agreed that Supreme Court could decide the remaining issues pursuant to the parties' submissions. Supreme Court thereafter granted a judgment of divorce, distributed the marital property, and directed the husband to pay the wife spousal support in the amount of $200 each week for three years, child support in the amount of $340 each week and counsel fees in the amount of $7,500. The husband now appeals.

With respect to the support awards, the husband argues that Supreme Court should not have imputed additional income to him and should have imputed more income to the wife. A trial court has broad discretion to impute income when determining the amount of child support and maintenance and is not bound by the parties' representations of their finances (see Matter of McKenna v McKenna, 137 AD3d 1464, 1465-1466 [2016]; Ceravolo v DeSantis, 125 AD3d 113, 119 [2015]; Harrington v Harrington, 93 AD3d 1092, 1093 [2012]). The husband, who owned a property maintenance business, claimed that he earned approximately $63,000 in 2010 and approximately $43,000 in 2013. The wife, who has two Master's degrees and is a certified school counselor, worked part time and earned approximately $18,000 in 2010. In 2013, the wife disclosed income in the amount of $16,000, but the evidence established that she also worked a second part-time job, earning approximately $2,125 per month. Supreme Court imputed income in the amount of $44,447.16 per year to the wife and $85,000 per year to the husband.

We find ample support for Supreme Court's determination to impute income to the parties. Income may be imputed where a party does not report all of his or her income (see Matter of McKenna v McKenna, 137 AD3d at 1466), where personal expenses are paid through a business account (see Harrington v Harrington, 93 AD3d at 1093; McAuliffe v McAuliffe, 70 AD3d 1129, 1131 [2010]) and where a party's earning capacity is enhanced by his or her employment experience and education (see Armstrong v Armstrong, 72 AD3d 1409, 1413 [2010]). Here, Supreme Court noted that the Bankruptcy Court accepted the husband's annual income to be

$39,747.84 per year. It also cited evidence that the husband earned more than $120,000 per year until 2009, when he began to change the way he kept his financial records, and that he historically paid for the family's expenses through the business accounts. Further, the court astutely observed that the husband's income similarly decreased during the prior action for a divorce and that the business's gross profits were "extremely disproportionate to [the husband's] net income." As for the wife, the court emphasized her advanced degrees and rejected her argument that she should not be required to work full time and instead fixed her income pursuant to her actual earnings derived from the two part-time jobs in accordance with the findings of the Bankruptcy Court. Based on the record, we find sound and substantial support for the court's determination of the parties' incomes (see Bean v Bean, 53 AD3d 718, 722 [2008]).

The husband also argues that the wife was not entitled to an award of maintenance because she had become self-sufficient during the pendency of the action. "The amount and duration of a maintenance award are a matter within the sound discretion of Supreme Court, and the award will not be disturbed so long as the statutory factors and the parties' predivorce standard of living were properly considered" (Cervoni v Cervoni, 141 AD3d 918, 919 [2016] [internal quotation marks and citation omitted]). The court need not articulate every factor it considers, but it "must provide a reasoned analysis of the factors it ultimately relies upon in awarding maintenance" (Robinson v Robinson, 133 AD3d 1185, 1186 [2015] [internal quotation marks and citation omitted]). Here, it was not disputed that a large share of the wife's income was earned from a temporary job with a fixed term. Although Supreme Court was not convinced that the wife should continue to work part time, her earning capacity — at least in the short term — was reduced as a result of the parties' decision that she work part time once their oldest child was born.

Our review of the record reveals that Supreme Court considered statutory factors such as the length of the marriage, and the parties' ages, health and their preseparation standard of living (see Domestic Relations Law § 236 [B] [former (6)]; Funaro v Funaro, 141 AD3d 893, 898 [2016]). The court also acknowledged the wife's contributions to the husband's business and that the

parties' standard of living was maintained through the accumulation of debt — which the husband discharged in the bankruptcy proceeding. Mindful that "the purpose of maintenance is to provide temporary support while the recipient develops the skills and experience necessary to become self-sufficient" (Vantine v Vantine, 125 AD3d 1259, 1261 [2015] [internal quotation marks, brackets and citation omitted]), we discern no abuse of discretion in Supreme Court's award of spousal maintenance to the wife (see Robinson v Robinson, 133 AD3d at 1186-1187).

The husband also challenges Supreme Court's determination to award spousal and child support to the wife retroactive to the date of commencement of the action and argues that he was entitled to a credit for certain payments made during the pendency of the action. We disagree. Generally, both child and spousal support awards are retroactive to the date an action for divorce is commenced (see Domestic Relations Law § 236 [B] [6] [a]; [7] [a]; Esposito-Shea v Shea, 94 AD3d 1215, 1218 [2012]; Harrington v Harrington, 300 AD2d 861, 863-864 [2002]), and the payor may be entitled to a credit for support payments made during the pendency of the action (see McAuliffe v McAuliffe, 70 AD3d at 1135). Supreme Court properly credited the husband for the monthly payments that he indisputably made for the car that the wife drove. In contrast, the husband offered neither evidence that he paid the mandated carrying charges on the marital residence nor evidence of any other voluntary payments during the pendency of the action. Absent such evidence, Supreme Court did not have a basis to award the husband any further credit against the retroactive award (see Baraby v Baraby, 250 AD2d 201, 205 [1998]).

Turning to equitable distribution, Supreme Court determined that the boat, purchased by the husband in 1996 for approximately $34,000, was transmuted from separate property into marital property. The remaining marital property included the marital residence, the parties' retirement accounts, the husband's business, the vehicles that each party drove and the wife's jewelry. The court awarded the wife the marital residence, the car she drove, her jewelry, an amount equaling one half of the insurance proceeds used to purchase a 1996 truck acquired by the

husband, one quarter of the value of the husband's business and one half of the value of the boat. Supreme Court declined to award the husband a credit for marital funds paid towards the wife's premarital student loans and awarded each party the value of their respective retirement accounts. In sum, the distributive award, including the marital residence, totaled $89,308.58 to the wife and $47,050 to the husband. The husband contends that Supreme Court erred because it overvalued the business and abused its discretion with regard to the distribution of the martial residence, the wife's retirement account, the two cars and the jewelry. The husband also contends that Supreme Court should have credited him for marital funds paid towards the loan obtained for a Master's degree that the wife earned prior to the marriage – particularly because the court declined to award him an origination credit for the boat.

"A trial court's determination of equitable distribution is discretionary, based on the unique circumstances of each case, and such determinations will not be overturned on review unless they fail to properly account for the guiding statutory factors enumerated in Domestic Relations Law § 236 (B) (5) (d)" (Keil v Keil, 85 AD3d 1233, 1234 [2011] [citations omitted]). Whether property is marital and thus subject to equitable distribution is a question of law (see Fields v Fields, 15 NY3d 158, 161 [2010]), and the court is not obligated to distribute all marital property on an equal basis (see Musacchio v Musacchio, 107 AD3d 1326, 1330 [2013]). As Supreme Court recognized, since the boat was purchased prior to the marriage, it was the husband's separate property (see Domestic Relations Law § 236 [B] [1] [d] [1]; Ceravolo v DeSantis, 125 AD3d at 115). While we do not find record evidence to support Supreme Court's determination that the boat was transmuted into marital property, we do find that the wife was entitled to recoup her equitable share of the marital funds utilized to pay off the corresponding boat loan (see Mahoney-Buntzman v Buntzman, 12 NY3d 415, 421 [2009]; Ceravolo v DeSantis, 125 AD3d at 119). The parties agreed that the boat had a value of $9,000, but there was limited evidence with regard to the specific amount of separate funds used to pay for the boat prior to the marriage. That said, we discern no abuse of discretion in the court's determination to split the depreciated value of the boat between the parties. Similarly, and in the

absence of any evidence that the wife's Master's degree conferred an economic benefit, we reject the husband's argument that he was entitled to a credit for marital funds paid toward the wife's student loans (see Mahoney-Buntzman v Buntzman, 12 NY3d at 422).

Turning to the husband's business, "the valuation of a business for equitable distribution purposes is an exercise properly within Supreme Court's fact-finding power to be guided by expert testimony" (Nissen v Nissen, 17 AD3d 819, 821 [2005] [internal quotation marks, brackets and citation omitted]; accord Keil v Keil, 85 AD3d at 1237).  Here, neither party produced any expert evidence with regard to the value of the business, and both consented to the court deciding the issue based on their submissions.  These submissions included uncontradicted evidence that the husband and his former partner agreed in 2012 that the business was worth $55,200 for purposes of a buyout.  While generally a business asset is valued as of the date of commencement of an action, Supreme Court has some discretion in this regard where such valuation may be inequitable (see Fehring v Fehring, 58 AD3d 1061, 1063 [2009]).  Under the circumstances, we find no error in Supreme Court's determination to value the business utilizing the buyout amount (see Cervoni v Cervoni, 141 AD3d at 920; Burtchaell v Burtchaell, 42 AD3d 783, 787 [2007]).  Further, we reject the husband's argument that Supreme Court should not have awarded the wife one half of the insurance proceeds used to purchase his 1996 truck because such proceeds were a business asset.  The husband offered no evidence of the value of the truck, which he claimed to be a marital asset subject to equitable distribution in his statement of proposed disposition.  Under the circumstances, and without any other evidence with regard to the value of the 1996 truck, the husband cannot now claim otherwise (see Robinson v Robinson, 133 AD3d at 1190).

The husband also challenges Supreme Court's determination to award the wife 100% of the marital residence.  The evidence established that the residence was purchased during the marriage for $165,000, was worth $238,000 at the time of the action and was encumbered by two mortgages, yielding net equity in the amount of $42,376.07.  After noting that each party would ordinarily be entitled to a distributive award in the amount of

$21,188.03, the court also considered such "extraordinary" circumstances as the husband's decision to request and obtain a discharge of the debt encumbering the marital residence in Bankruptcy Court, his failure to appear in the pending foreclosure action and his failure to comply with the court's directive to pay the carrying charges on the residence during the pendency of the action. By comparison, Supreme Court noted the wife's decision to reaffirm the residential debt and her appearance in the foreclosure action with the goal of salvaging the home. In his statement of proposed disposition, the husband conceded that the net equity in the marital residence was further reduced because the parties owed more than $17,000 in taxes and agreed to allow the wife to keep any equity so long as he was not obligated to assume any of the debt. Given this concession, and because it is uncertain that the wife will benefit from the net equity in the marital residence, we discern no abuse of discretion in the court's determination to award the wife title to the residence (see Cornish v Eraca-Cornish, 107 AD3d 1322, 1323 [2013]).

We reject the husband's argument that Supreme Court should have awarded him an equitable share in the wife's retirement account, the car she drove and the jewelry. At the time that the action was commenced, each party had a retirement account worth less than $10,000 each, the jewelry was worth approximately $6,800 and the car was worth approximately $19,500, less a lien in the amount of approximately $5,185. When we exclude the marital residence from the equitable distribution award, Supreme Court's division of the marital assets was nearly equal. Mindful of the court's "substantial flexibility in fashioning an appropriate decree based on what it views to be fair and equitable under the circumstances," and particularly considering that the husband retained the majority of the business — the parties' sole income producing asset — there is no basis to conclude that Supreme Court improvidently exercised its substantial discretion when distributing the marital property (Mahoney-Buntzman v Buntzman, 12 NY3d at 420; see Funaro v Funaro, 141 AD3d at 898; Cornish v Eraca-Cornish, 107 AD3d at 1323).

    The husband also contends that Supreme Court should not
have awarded counsel fees to the wife without first conducting a
hearing.  We disagree.  The parties authorized the court to
decide the issues on submission and the husband did not request a
hearing on counsel fees in his statement of proposed disposition
(see Bush v Bush, 46 AD3d 1140, 1141 [2007]).  Further, we
decline the husband's invitation to consider facts that have
arisen since the entry of the divorce (see Pacillo v Pacillo, 155
AD2d 736, 737 [1989]).

    Egan Jr., J.P., Rose, Clark and Aarons, JJ., concur.



    ORDERED that the judgment is affirmed, without costs.




                    ENTER:


                    Robert D. Mayberger
                    Clerk of the Court