Hughes v Hughes (2021 NY Slip Op 07322)





Hughes v Hughes


2021 NY Slip Op 07322


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

530415
[*1]Rory Hughes, Appellant-Respondent,
v
Danielle Hughes, Respondent- Appellant.

Calendar Date:October 13, 2021

Before:Egan Jr., J.P., Lynch, Clark, Pritzker and Colangelo, JJ.

Gordon, Tepper & DeCoursey, LLP, Glenville (Nicole Helmer Simon of counsel), for appellant-respondent.
Thomas F. Garner, Middleburgh, for respondent-appellant.



Colangelo, J.
Cross appeals from a judgment of the Supreme Court (Bartlett III, J.), entered October 10, 2019 in Schoharie County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in July 2013 and are the parents of a son (born in 2014). In January 2018, the husband commenced this action for divorce, alleging that the marriage had irretrievably broken down for at least six months. The wife joined issue and asserted a counterclaim for divorce on the same ground. Prior to trial, the parties entered into various stipulations regarding entitlement to separate and marital property, with the reservation of any applicable credits due the other. At the time of trial,[FN1] a June 2018 order provided for joint legal and shared physical custody of the child. Following a bench trial on the issues of maintenance, child support and equitable distribution, and submissions by the parties of proposed findings of fact and conclusions of law, Supreme Court granted a judgment of divorce to the husband, which incorporated the June 2018 custody order and directed the wife to pay child support to the husband for their son in the biweekly amount of $250 with arrears in the biweekly amount of $25. The judgment further directed that the wife reimburse the husband for his contribution toward the mortgage on her home in the amount of $5,279, and pay $6,000 towards the husband's counsel fees. With respect to marital debt, the judgment directed that the wife be solely responsible to pay the remaining balance on the Sears/Citibank credit card and that the husband be solely responsible to pay the remaining balance on the Goodyear/Mavis credit card. Supreme Court declined to award the husband postdivorce spousal maintenance. These cross appeals ensued.
The husband initially contends that Supreme Court erred in failing to award him postdivorce maintenance. We disagree. The trial testimony established that the parties, who married in July 2013, were 40 years old at the time of trial and in good health, with the exception of a heart murmur reported by the husband. At the time the action was commenced in January 2018, both parties were gainfully employed, the husband as a tech adviser with Cellular Connection, a retailer of the Verizon network, and the wife as a nurse with Health First. The husband testified to earning $8.25 per hour plus commissions working 37 to 40 hours per week with occasional overtime. His W-2 statements from 2017 and 2018, which were admitted into evidence, reflect an increase in his income from $36,110.73 in 2017 to $41,3100.41 in 2018. He currently earns between $2,100 to $3,100 per month. At the time of the marriage, the husband was employed at Premier Technologies, a retailer of AT & T, earning $13.25 per hour plus commissions of from $250 to $600 every two weeks. The husband testified that during the pendency [*2]of the action, he was able to meet his financial obligations with, aside from his earnings, loans from his mother and an inheritance from his father. He testified that he took on secondary jobs in 2015 to increase his income but did not know how much extra he earned. The husband also testified that all of his expenses have increased now that he lives alone, referencing specifically his rent, which has increased from $485 to $915 per month, along with utility expenses, grocery and dining out expenses and expenses associated with owning and maintaining his vehicle.
The wife's earnings in 2018 were estimated to be $101,740,[FN2] an increase from $82,475 in 2017. The wife testified that, throughout the marriage, the husband was often unemployed and at times received unemployment, and she often worked two jobs to support the family.[FN3] She testified that she often helped him prepare a resume and cover letters for higher paying jobs but he was not hired. She testified that he obtained his current employment at the end of their relationship. She acknowledged that the husband earned extra money working for, among others, a garage door company, but that money was not deposited into their joint account, from which the household bills were paid. The wife also testified to having $63,000 in student loan debt.
"The primary purpose of maintenance is to encourage self-sufficiency by the recipient, and maintenance is appropriate where the marriage is of long duration, [and] the recipient spouse has been out of the work force for a number of years, has sacrificed her or his own career development or has made substantial noneconomic contributions to the household or to the career of the payor" (McCaffrey v McCaffrey, 107 AD3d 1106, 1106 [2013] [internal quotation marks, brackets, ellipsis and citations omitted]). "'[I]n any matrimonial action, the court, upon application by a party, shall make its award for post-divorce maintenance pursuant to the' guidelines set forth in the statute" (Hughes v Hughes, 198 AD3d 1170, 1173 [2021], quoting Domestic Relations Law § 236 [B] [6] [a]), considering the payor's annual salary up to an annual income cap of $184,000 (see Domestic Relations Law § 236 [B] [6] [c], [d]). "The amount and duration of a maintenance award[, if any] are a matter within the sound discretion of Supreme Court, and the award will not be disturbed so long as the statutory factors and the parties' predivorce standard of living were properly considered" (Pfister v Pfister, 146 AD3d 1135, 1137 [2017] [internal quotations marks and citation omitted]). The court need not articulate every factor it considers, but it "must provide a reasoned analysis of the factors it ultimately relies upon in awarding [or declining to award] maintenance" (id. [internal quotation marks and citation omitted]).
Our review of the record reveals that Supreme Court considered statutory factors such as the length of the marriage, the parties' ages, health, present and future [*3]earning capacity and equitable distribution. During this marriage of relatively short duration, the wife's earnings were consistently higher but their incomes are proportionally the same as when they first married. As Supreme Court correctly noted, the wife is saddled with student loan debt. Further, the record reveals that the husband's income is stable and he has demonstrated an ability to earn extra income to supplement his current employment when necessary. Supreme Court, in declining to award the husband maintenance, also considered the wife's efforts to assist the husband in getting a better job and giving him ample opportunity to go to school and better his career, which he refused. As the court noted, the husband has not sacrificed anything in his career by virtue of the marriage and provided no assistance to enhance the wife's career. As Supreme Court provided a reasoned analysis of the relevant statutory factors based upon the trial testimony and the parties' financial submissions, we discern no abuse of discretion in Supreme Court's denial of maintenance to the husband (see Hughes v Hughes, 198 AD3d at 1174).
With regard to child support, Supreme Court appropriately deemed the wife, the parent with greater income in an equally shared physical custody arrangement, to be the noncustodial parent for child support purposes (see Matter of Laskowsky v Laskowsky, 187 AD3d 1342, 1343 [2020]; Matter of Mitchell v Mitchell, 134 AD3d 1213, 1214 [2015]). Pursuant to the June 2018 custody order, the parties have been equally sharing custody of their son, notwithstanding the wife's testimony and her submission of handwritten calendars from November 2017 to September 2018 that she contends demonstrate that the child is with her more than 50% of the time. As Supreme Court appropriately determined, the wife's calendars reflect "the reality of the situation — that they [have] a de facto pure shared custody arrangement" revolving around the parties' work schedules (Matter of Laskowsky v Laskowsky, 187 AD3d at 1343; see Matter of Mitchell v Mitchell, 134 AD3d at 1214-1215).
We find no merit to the husband's claim that the award of child support is unjust or inappropriate because it represents a downward deviation by 60% from the presumptively correct amount of child support under the Child Support Standards Act (see Domestic Relations Law § 240 [1-b]). "The [Child Support Standards Act] provides a three-step method for calculating child support. The first step is to compute combined parental income. Second, the combined parental income is multiplied by a designated percentage based upon the number of children to be supported. Finally, that amount is then allocated between the parents by applying each parent's respective portion to the total income" (Elizabeth B. v Scott B., 189 AD3d 1833, 1837 [2021] [citations omitted]). "After completing the three-step formula, the statute allows the court to deviate from the basic child support obligation [*4]upon proof that the award would be 'unjust or inappropriate'" (Allen v Allen, 179 AD3d 1318, 1321 [2020], quoting Domestic Relations Law § 240 [1-b] [f]; see Bast v Rossoff, 91 NY2d 723, 727 [1998]).
Supreme Court completed the three-step formula to arrive at a basic support obligation of $22,457 per year, calculating the wife's pro rata share of 71% to be $1,329 per month. In deviating from such obligation to an award of $500 per month, with arrears in the amount of $50 per month retroactive to the date of the commencement of the action,[FN4] Supreme Court considered the relevant statutory factors, with particular emphasis on the financial resources of the custodial and noncustodial parent and those of the child, the standard of living the child would have enjoyed had the marriage or household not been dissolved, the tax consequences to the parties [FN5] and their lack of disposable income. Supreme Court also properly considered the ability of the wife to maintain a household for the child while managing significant debt if she were required to pay the basic child support obligation of $1,329 per month.[FN6] In addition, in deviating from the basic child support obligation, Supreme Court ordered the wife to maintain health, dental and vision insurance for the child and pay 100% of the premiums associated therewith. Under the foregoing circumstances, we find no abuse of discretion in the court's downward deviation of the wife's basic child support obligation (see Elizabeth B. v Scott B., 189 AD3d at 1837-1838; Esposito-Shea v Shea, 94 AD3d 1215, 1217-1218 [2012]).
Both parties challenge Supreme Court's determination of equitable distribution. The wife contends that the court erred in crediting the husband with a contribution to the mortgage payment on her house and directing that she be solely responsible for the debt on the Sears/Citibank credit card. The husband argues that Supreme Court erred in failing to direct the wife to pay back the full amount of his contribution to her mortgage delinquency and directing that he bear sole responsibility for the debt on the Goodyear/Mavis credit card.
"Supreme Court has substantial discretion in determining the fair and equitable distribution of marital property under the circumstances, and its award will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors under Domestic Relations Law § 236 (B) (5) (d)" (Martin v Martin, 178 AD3d 1339, 1341 [2019] [internal quotation marks and citations omitted]]; see Mack v Mack, 169 AD3d 1214, 1216 [2019]; Button v Button, 165 AD3d 1528, 1530 [2018]). Contrary to the wife's contention, Supreme Court addressed the relevant statutory factors, including the parties' incomes and property at the time of the marriage and at the time of commencement of the action, the contributions made by the husband towards the wife's delinquent mortgage, the duration of the marriage, the age and health of the parties, the need of the wife to occupy [*5]the marital residence, which she owns, and to retain ownership of certain property purchased for the residence during the marriage, and the tax consequences to each party. Supreme Court further took into consideration the pretrial stipulations of the parties entered into on November 9, 2018, which resolved issues with respect to the marital residence, all items of personal property and the parties' respective retirement accounts.
We find no abuse of discretion in the direction that the wife pay the sum of $5,279 to the husband for reimbursement of one half of the payment on the mortgage delinquency on the wife's separate property. The testimony of the parties and the M & T Bank statements introduced at trial established that the husband paid the sum of $10,558.54 to avoid a foreclosure action based upon past unpaid mortgage payments. Although the husband failed to produce documentary evidence that the money came from an account held by his mother funded with an inheritance from his father, he testified that the money came from his mother. The wife did not know the origin of the money but, in any event, she did not refute that it was the husband's separate property.
"When one spouse contributes separate property toward the purchase of a marital asset, such as a marital home, the contributing spouse is generally entitled to a credit representing the amount of that separate property contribution" (Beardslee v Beardslee, 124 AD3d 969, 969 [2015]). "The use of separate funds to purchase a marital asset does not mandate that a court give a credit, however, the court may consider the use of separate property when exercising its discretion in arriving at an equitable distribution of that asset" (id.). In directing reimbursement to the husband of 50% of his contribution of separate property, Supreme Court deemed it inequitable for the wife and her ex-husband who own the house jointly to benefit from the husband's financial loss. We discern no abuse of discretion in the credit to the husband of 50% of his contribution, since the record reflects that the husband did not regularly contribute to the mortgage payments due to his frequent periods of unemployment during the marriage. Finally, in light of the substantial discretion granted to a trial court to determine what distribution of marital property, including debt, will be equitable under the circumstances, we find no abuse of discretion in Supreme Court's determination of the parties' respective obligations on the two credit cards (see Ball v Ball, 150 AD3d 1566, 1573 [2017]).
The wife finally contends that Supreme Court abused its discretion in making a partial award of counsel fees to the husband. We disagree. "When exercising its discretionary powers in this regard, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions as well as the complexity of the case and the [*6]extent of legal services rendered" (Bell-Vesely v Vesely, 180 AD3d 1272, 1276 [2020] [internal quotation marks and citations omitted]). "In an action for a judgment of divorce, a court retains the discretion to direct one party to pay the other party's counsel fees and, absent an abuse of discretion, its determination will not be disturbed" (St. Denny v St. Denny, 185 AD3d 1246, 1248 [2020] [citation omitted]). "There shall be a rebuttable presumption that counsel fees shall be awarded to the less[-]monied spouse" (Domestic Relations Law § 237 [a]). In view of the husband's lower income, he was the less-monied spouse presumptively entitled by statute to counsel fees. Moreover, the wife's actions in commencing an annulment action after the instant action was commenced and filing, prior to trial, an unsigned order to show cause in Family Court, later withdrawn, in an effort to prove that she was the custodial parent, added unnecessarily to the husband's litigation costs.
Egan Jr., J.P., Lynch, Clark and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed, without costs.



Footnotes

Footnote 1: The trial took place on three days, commencing in November 2018 and ending in April 2019.

Footnote 2: Supreme Court calculated the wife's income using her most recent pay stub for the pay period ending March 10, 2018 with a year-to-date gross income of $19,233.28.

Footnote 3: The wife testified that the husband was terminated from five different positions during the marriage, including his employment at Premier Technologies. The husband offered no testimony to the contrary.

Footnote 4: Generally, child support awards are retroactive to the date an action for divorce is commenced (see Domestic Relations Law § 236 [B] [7] [a]; Pfister v Pfister, 146 AD3d at 1138).

Footnote 5: The judgment of divorce directed the parties to alternate claiming the child on their tax returns.

Footnote 6: During the trial, the husband did not provide proof of any expenses other than everyday living expenses. The wife provided proof of payments for the mortgage, property taxes, student loan indebtedness and her vehicle.