Ramadan v Ramadan (2021 NY Slip Op 03636)





Ramadan v Ramadan


2021 NY Slip Op 03636


Decided on June 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 10, 2021

528079 529784
[*1]Adele L. Ramadan, Respondent- Appellant,
v
Mahmound Ramadan, Appellant- Respondent.

Calendar Date:April 29, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Thomas F. Garner, Middleburgh, for appellant-respondent.
Gordon, Tepper & DeCoursey, LLP, Glenville (Elise C. Powers of counsel), for respondent-appellant.



Aarons, J.
(1) Cross appeals from an order and a judgment of the Supreme Court (Mackey, J.), entered November 15, 2018 and December 7, 2018 in Albany County, granting, among other things, plaintiff a divorce, upon a decision of the court, and (2) appeal from an order of said court, entered March 28, 2019 in Albany County, which issued a qualified domestic relations order.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in February 2010 and are the parents of two children (born in 2011 and 2014). At the beginning of the marriage, the husband lived overseas and relocated to the United States in 2012. In August 2016, the wife commenced this action for divorce. A nonjury trial was held, during which the parties stipulated to, among other things, a divorce and the distribution of the wife's pension plan. Following the trial's conclusion, Supreme Court, in a November 2018 decision and order, among other things, granted the wife a divorce, equitably distributed the parties' marital property, awarded child support to the wife and denied the parties' respective requests for counsel fees. A judgment of divorce was subsequently entered in December 2018. The court thereafter entered a qualified domestic relations order (hereinafter QDRO). These appeals ensued.[FN1]
As an initial matter, the husband's assertion that reversal is required because Supreme Court's November 2018 decision does not reflect that the court considered the factors set forth in Domestic Relations Law § 236 (B) (5) (d) is without merit. The court's findings in its decision reveal that the court considered the trial testimony and documentary evidence, as well as the relevant statutory factors. To the extent that the court did not cite to each factor in its decision, "they do not have to be specifically cited when the factual findings of the court otherwise adequately articulate that the relevant statutory factors were considered" (Rosenkranse v Rosenkranse, 290 AD2d 685, 686 [2002]; see Lurie v Lurie, 94 AD3d 1376, 1378 [2012]). In any event, we may make the necessary adjustments where, as here, the record is sufficiently developed to do so (see Smith v Smith, 152 AD3d 847, 848 [2017]; Maczek v Maczek, 248 AD2d 835, 838 [1998]).
Turning to the merits, the parties challenge the separate property credit awarded to the husband based upon a down payment of $84,000 for the marital residence. The documentary evidence reveals that the husband maintained a bank account in Egypt and, according to a January 2010 statement — i.e., the time immediately prior to when the parties got married — this account had $64,865.64. In May 2013, approximately when the parties' offer for the marital residence was accepted, the husband's Egyptian bank account had $120,029.70. On May 16, 2013, $87,900 was transferred from this account to the husband's bank account in the United States. On July 17, 2013, $84,000 was subsequently transferred from the husband's United States bank [*2]account to the parties' joint account, from which the down payment was made.
The husband posits that he was entitled to a separate property credit in the entire amount of the down payment. As a general matter, "when one spouse contributes separate property toward the purchase of a marital asset, such as a marital home, the contributing spouse is . . . entitled to a credit representing the amount of that separate property contribution" (Wallace v Wallace, 154 AD3d 1078, 1081 [2017] [internal quotation marks, brackets and citation omitted]; see Fields v Fields, 15 NY3d 158, 167 [2010]). Contrary to the husband's argument, Supreme Court correctly limited his separate property credit regarding the down payment. The source of the down payment can be traced to the husband's Egyptian bank account. Of the $87,900 that was transferred from the Egyptian bank account, the court correctly concluded that $55,164.06 was marital property — i.e., the amount that increased during the parties' marriage. Accordingly, of the $84,000 used for the down payment, $55,164.06 was marital property, with the remaining $28,835.94 being the husband's separate property. Because the husband's proof was insufficient to demonstrate that the entire $84,000 was his separate property, his separate property credit with respect to the down payment should be $28,835.94 (see Cassara v Cassara, 1 AD3d 817, 819 [2003]).[FN2]
That said, according to the wife, the husband was not entitled to any separate property credit for the $84,000 down payment. The wife correctly notes that the $84,000 was presumptively marital property because it came from the parties' joint account (see Macaluso v Macaluso, 124 AD3d 959, 960 [2015]). The husband, however, sufficiently rebutted the presumption that part of the funds for the down payment was his separate property. As mentioned, the funds were easily traceable to the husband's Egyptian bank account and, in view of the timing of the transfers from this account to the parties' joint account and the purchase of the marital residence, the placement of the funds in the joint account was done more for convenience (see Wallace v Wallace, 154 AD3d at 1081; Albertalli v Albertalli, 124 AD3d 941, 943 [2015]). As such, the wife's argument is without merit.
The husband argues that he should have been awarded a credit based upon monies used to pay some of the wife's separate debts. "If marital assets are used to reduce one party's separate indebtedness, the other spouse can recoup his or her equitable share of the expended marital funds" (Biagiotti v Biagiotti, 97 AD3d 941, 943 [2012] [internal quotation marks and citations omitted]). Regarding the wife's student debt, the husband testified, and the documentary evidence reflects, that, in November 2012, $8,461.20 was paid from the parties' joint bank account for this debt. In view of this proof, the husband should have been given a credit of $4,230.60 for payments made toward the wife's student debt (see [*3]id.; Micha v Micha, 213 AD2d 956, 958 [1995]). Regarding the use of funds for payments of a mortgage related to real property located on Hamilton Street, there is no dispute that this property was the wife's separate property. The hearing testimony, as well as the bank records, confirms that money from the parties' joint bank account was used to satisfy the mortgage for this property (see Alessi v Alessi, 289 AD2d 782, 783 [2001]). Although the wife characterizes these payments as minimal, they totaled $21,282.16. Accordingly, the husband should have been given a credit of $10,641.08 for marital funds directed towards the mortgage of the Hamilton Street property.
As to the appreciation in value of the Hamilton Street property, the husband asserts that Supreme Court ignored the marital funds used to improve the property, as well as his significant contributions made thereto. "When a nontitled spouse's claim to appreciation in the other spouse's separate property is predicated solely on the nontitled spouse's indirect contributions, some nexus between the titled spouse's active efforts and the appreciation in the separate asset is required" (Pace v Pace, 187 AD3d 1443, 1445 [2020] [internal quotation marks and citation omitted]; see Keil v Keil, 85 AD3d 1233, 1235 [2011]). The husband, as the nontitled spouse, bore the burden of proving the value of his contributions to the separate asset (see Arthur v Arthur, 148 AD3d 1254, 1255 [2017]; Solomon v Solomon, 307 AD2d 558, 559 [2003], lv dismissed 1 NY3d 546 [2003]). The wife testified that the husband made incidental contributions to the Hamilton Street property and that she had paid for the property improvements with her own funds. Although the husband testified that marital funds were used for the property improvements, we perceive no basis to disturb the court's implicit credibility determination in favor of the wife (see Vantine v Vantine, 125 AD3d 1259, 1260-1261 [2015]; Lisetza v Lisetza, 135 AD2d 20, 24 [1988]). To the extent that the husband contends that his contributions were greater than what the court concluded, the husband's proof was insufficient to support his position (see Vantine v Vantine, 125 AD3d at 1261; Bonanno v Bonanno, 57 AD3d 1260, 1261 [2008]; Solomon v Solomon, 307 AD2d at 559).
Regarding the issue of wasteful dissipation, Supreme Court awarded the wife a credit in the amount of $28,000 based upon the husband's wasteful dissipation of marital assets. Of this amount, $8,000 was attributed to the husband's sale of General Electric stock. The husband's challenge to this part of this wasteful dissipation credit centers on the notion that the General Electric stock was acquired prior to the marriage and, therefore, was his separate property. The husband, however, failed to tender sufficient proof to substantiate this claim (see Seidman v Seidman, 226 AD2d 1011, 1013 [1996]; Carney v Carney, 202 AD2d 907, 909 [1994]).
As to the remaining $20,000, the wife testified [*4]that she discovered financial records and statements that caused her to conclude that the husband had contacted escort services and went to exotic massage parlors. When confronted about these expenses, his explanations consisted mainly of an inability to recall them (see Owens v Owens, 107 AD3d 1171, 1176 [2013]; Altieri v Altieri, 35 AD3d 1093, 1095 [2006]). The husband also attempted to justify his hotel and spa expenses as family vacations, needing to get away due to marital difficulties or hosting friends, but Supreme Court apparently did not credit his testimony (see Noble v Noble, 78 AD3d 1386, 1388 [2010]; Solomon v Solomon, 307 AD2d at 560-561). The husband further argues that, because the hotel and spa charges totaled approximately $6,500, the awarded amount of $20,000 was unwarranted. The wife, however, testified to expenditures and substantial cash withdrawals that went beyond the hotel and spa charges. The record discloses that the amount for the hotels and spas, along with the other expenditures, exceeded $40,000. Accordingly, the court did not abuse its discretion in awarding $20,000 to the wife as a wasteful dissipation credit based upon the husband's expenditures (see Lowe v Lowe, 123 AD3d 1207, 1211 [2014]; Conceicao v Conceicao, 203 AD2d 877, 879 [1994]).
The husband also raises arguments concerning Supreme Court's distribution of the parties' credit card debt and certain personal property. The court's determination as to the equitable distribution of assets is given considerable discretion (see Jackson v Jackson, 127 AD3d 1371, 1372 [2015]). Because the record discloses no abuse of discretion on this point, the court's determination will not be disturbed (see Pfister v Pfister, 146 AD3d 1135, 1141 [2017]; Butler v Butler, 256 AD2d 1041, 1042-1043 [1998], lv denied 93 NY2d 805 [1999]).
The husband's contention that Supreme Court erred by failing to issue a QDRO that provided him with survivorship benefits is unavailing.[FN3] Prior to the commencement of trial, the parties stipulated as to the distribution of the wife's pension plan. That stipulation did not provide for the survivorship benefits sought by the husband (see Ross v Ross, 16 AD3d 713, 714 [2005]; see generally McCoy v Feinman, 99 NY2d 295, 302-303 [2002]). The husband claims that he misapprehended the extent of the stipulation and relies on the fact that he proceeded pro se. The husband, however, did not proceed pro se for the entirety of the underlying proceedings. Furthermore, at the time the parties entered into the stipulation, the husband was represented by counsel, and no objections to the stipulation's terms were raised. Accordingly, the husband's contention is without merit.
The wife argues that Supreme Court erred by failing to award her counsel fees. We disagree. The court considered the parties' financial circumstances, including when they were employed, and our review of the record fails to disclose any abuse of discretion in the denial of [*5]the wife's request for counsel fees (see Teaney v Teaney, 138 AD3d 1301, 1303-1304 [2016]; Soles v Soles, 41 AD3d 904, 908 [2007]; Webber v Webber, 30 AD3d 723, 724 [2006]). Although the wife also argues that the husband's obstructionist behavior during trial warranted counsel fees in her favor, the record belies this claim (see Teaney v Teaney, 138 AD3d at 1304).
As to the issue of child support payments, Supreme Court directed the husband to pay child support in the amount of $1,712 per month — the amount calculated under the Child Support Standards Act (see Domestic Relations Law § 240 [1-b]). The court nevertheless found that, from February 2017 to January 2018, the appropriate amount of child support to be paid by the husband should be $500 per month and that, from February 2018 to May 2018, the amount should be $1,000 per month. The wife challenges the court's decision to the extent that it lowered the child support payments for these periods. After calculating a party's basic support obligation based upon the formula in the Child Support Standards Act, the court may deviate from the amount derived where it concludes that the derived amount was "unjust or inappropriate" (Bast v Rossoff, 91 NY2d 723, 727 [1998] [internal quotation marks and citation omitted]; see Donna E. v Michael F., 185 AD3d 1179, 1181 [2020]). In our view, the record supports the court's finding that the wife was earning more than the husband during these periods. Even though the wife was laid off in 2018, she still earned more than the husband when considering her severance package and her unemployment benefits. As such, the court's determination with respect to child support will not be disturbed (see Riemersma v Riemersma, 84 AD3d 1474, 1477 [2011]).
Garry, P.J., Clark, Reynolds Fitzgerald and Colangelo, JJ., concur.
ORDERED that the appeal and cross appeal from the order entered November 15, 2018 are dismissed, without costs.
ORDERED that the judgment entered December 7, 2018 modified, on the law, without costs, by (1) reducing defendant's separate property credit to $28,835.04 and (2) reversing so much thereof as denied defendant's request for a credit based upon payments to satisfy plaintiff's separate indebtedness; grant the request for said credit and award defendant $14,871.68; and, as so modified, affirmed.
ORDERED that the order entered March 28, 2019 is affirmed, without costs.



Footnotes

Footnote 1: The husband's appeal and the wife's cross appeal from the November 2018 order must be dismissed because the right to appeal therefrom terminated upon the entry of the December 2018 judgment of divorce (see Hassan v Barakat, 171 AD3d 1371, 1373 n 1 [2019]). Notwithstanding the foregoing, the issues raised with respect to the November 2018 order are brought up for review in the appeal and cross appeal from the December 2018 judgment (see id.).

Footnote 2: It appears that Supreme Court's separate property credit award of $32,736 was based upon the $87,900 transferred from the husband's Egyptian bank account to his United States bank account. As there is no indication in the record that $87,900 was used for the down payment of the marital residence, the court's calculation was incorrect in this regard.

Footnote 3: We note that a party cannot appeal as of right from a QDRO (see Econopouly v Econopouly, 167 AD3d 1378, 1378 n [2018]). We nevertheless treat the husband's notice of appeal with respect to the QDRO as a motion for leave to appeal therefrom and grant it (see id.).