King v King (2022 NY Slip Op 01209)





King v King


2022 NY Slip Op 01209


Decided on February 24, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:February 24, 2022

530348 531551
[*1]Henry S. King Jr., Respondent,
v
Lynn S. King, Appellant.

Calendar Date:January 4, 2022

Before:Egan Jr., J.P., Lynch, Pritzker and Reynolds Fitzgerald, JJ.

Susan J. Civic, Albany, for appellant.
Young, Fenton, Kelsey & Brown, PC, Albany (Andrea Kelsey of counsel), for respondent.



Pritzker, J.
Appeals from an order and a judgment of the Supreme Court (Ferreira, J.), entered September 17, 2019 and March 16, 2020 in Albany County, granting, among other things, equitable distribution of the parties' marital property upon a decision of the court.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 1977 and, in 1989, plaintiff moved out of the marital residence. After the wife moved for a spousal support order in Family Court, the parties consented to the entry of an order pursuant to which the husband would pay the wife $550 biweekly. In 1993, the husband filed for divorce on the ground of cruel and inhuman treatment, but the complaint was subsequently dismissed. In 2011, after the husband fell behind on spousal support payments, another support order was entered by Family Court, reducing the husband's obligation and providing for the payment of arrears.
Then, in July 2016, after the wife sought to modify the support payments, the husband commenced this action for divorce based on irretrievable breakdown of the marriage for a period of six months or more. The wife opposed, and the husband subsequently moved for summary judgment for divorce, which was granted; the judgment was held in abeyance pending a decision on other issues, including maintenance and equitable distribution. A two-day trial ensued, after which Supreme Court determined that the wife was not entitled to equitable distribution of the husband's 401(k) and retirement plans and declined to impose any postdivorce maintenance. The wife appeals.
Initially, the wife's contention that Supreme Court erred in not permitting her to contest the ground for divorce at trial is unpreserved given that the wife did not object at trial when Supreme Court inquired as to this issue (see Kimberly C. v Christopher C., 155 AD3d 1329, 1331 [2017]). The wife also asserts that Supreme Court erred in terminating her "lifetime" spousal support award. "In any matrimonial action, the court, upon application by a party, shall make its award for postdivorce maintenance pursuant to the guidelines set forth in [Domestic Relations Law § 236 (6)]. The court shall order the postdivorce maintenance obligation up to the income cap in accordance with the statutory formula, unless the court finds that the postdivorce maintenance guideline obligation is unjust or inappropriate, which finding shall be based upon consideration of any one or more of the specifically enumerated factors set forth in the statute" (Harris v Schreibman, 200 AD3d 1117, 1120 [2021] [internal quotation marks, brackets and citations omitted]). "The amount and duration of a maintenance award, if any, are a matter within the sound discretion of Supreme Court, and the award will not be disturbed so long as the statutory factors and the parties' predivorce standard of living were properly considered" (Hughes v Hughes, 198 AD3d 1170, 1173 [2021] [internal quotation marks, brackets and citations omitted[*2]]). There are 15 factors to contemplate under the statute. Although "[t]he court need not articulate every factor it considers, . . . it must provide a reasoned analysis of the factors it ultimately relies upon in [determining] maintenance" (Pfister v Pfister, 146 AD3d 1135, 1137 [2017] [internal quotation marks and citations omitted]; see Domestic Relations Law § 236 [B] [6] [e] [1]). Further, the court need not rely on the parties' representations of their respective finances, "but may exercise its discretion by imputing income based upon such factors as [a] party's education, qualifications, employment history, past income, and demonstrated earning potential" (Mack v Mack, 169 AD3d 1214, 1217 [2019] [internal quotation marks and citations omitted]; see Harris v Schreibman, 200 AD3d at 1121).
Testimony at trial established that the husband was 63 years old and in good health at the time of trial. The husband indicated that his highest level of education is a GED and he has been employed in various positions throughout the length of the marriage. When the parties were married, the husband was working as a driver and salesperson, and the wife was working at an insurance company in an administrative capacity. There was a period of unemployment prior to the husband securing employment in 2005 at the Golub Corporation, where he worked until 2016. He testified that he was earning $65,000 per year when he left. At the time of trial, the husband indicated that was working as a sales supervisor earning $48,000 per year. For additional income, the husband was driving for Uber earning, on average, $250 per week, but he is not compensated for gas mileage or wear and tear on his vehicle. In 1985, the wife purchased property located in the hamlet of Feura Bush, Albany County and the husband was later added to the deed. In 1986, the parties received a $66,000 loan and secured same with a mortgage on the property, the payments for which were paid through a joint bank account. Three years later, the husband transferred his interest in the property to the wife.
The husband testified that, in 1989, he moved out of the marital residence and into an apartment. According to the husband, the parties briefly attempted to reconcile, at which time the husband moved back into the residence, but, in 1991, he moved out and did not return. He was then served a petition seeking spousal support, in which he was ordered to pay the wife $550 biweekly. The husband admitted that he had been in arrears on his support payments in the past. The husband testified that, since 1991, he has been in a long-term romantic relationship with another woman, with whom he has a child. He indicated that he lives with this woman and that they split household expenses. The husband testified to certain information contained in his statement of net worth. He also indicated that he had credit card debt amounting to $2,600. At one point he did owe $16,400 in back taxes, but he has [*3]reduced that amount to $500.
At the time of trial, the wife was also 63 years old, in good health and was residing in the marital residence. The wife testified that she has an Associate's degree in secretarial science. At first, she could not explain her prior work history with certainty, but she submitted her resume. Most of her work has been administrative in nature and she admitted that she has often worked in a part-time capacity. She was not employed at the time of trial, having retired, and was receiving $750 monthly through Social Security benefits. She stated that one of the reasons that she was not working was to take care of the divorce action. She testified that she believed that the last time she worked was in 2015, but her resume reflects employment in 2016 and her 2016 tax return indicates that she earned $6,878 in income that year. The wife could not explain why her earnings were low considering her employment history. Her resume indicates that she has various computer skills, which she has retained. The wife indicated that she has received insurance through Medicaid. She does not have any retirement or pension accounts, but she does have a savings account, which was not reflected on her statement of net worth. The savings account statements reflect varying balances in excess of $2,000, which the wife alleges was an error. When asked to explain certain deposits into her account, the wife was unable to state who deposited the funds. When counsel inquired further, the wife stated, "My supports." The wife heavily relies on spousal support payments and receives Supplemental Nutrition Assistance Program payments. The wife indicated that she has not applied for any jobs recently, but there is no reason that she cannot work in certain positions.
Although the details did not completely corroborate the husband's testimony, the wife testified similarly regarding the attempted reconciliation between the parties. The wife corroborated the husband's testimony concerning the house and its ownership. She testified that, in approximately 2001, a family friend paid off the mortgage and now owns the residence but she is still listed on the deed. She stated that she has certain maintenance payments for the house and pays the homeowners' insurance, but the owner takes care of most expenses. Although she testified that she has not paid rent since 2005, her financial affidavit reflects rent or mortgage payments of $550. This same family friend assisted with the wife's counsel fees.
Because there was no evidence that she could not work, Supreme Court imputed income to the wife based on her administrative skill set and her ability to earn $10 per hour on a part-time basis. Based on the wife's imputed income and the husband's income, the court calculated the presumptive postdivorce maintenance obligation and then, after reviewing the statutory factors in Domestic Relations Law § 236 (B) (6) (e) (1), determined that this award was [*4]unjust and inappropriate. We discern no error. In articulating its reasoning for deviating from the presumptive maintenance amount, the court considered the statutory factors and ultimately relied on the length of the marriage and the length of time the parties lived apart, the present and future earning capacity of the parties, the existence and duration of a premarital joint household or a predivorce separate household and equitable distribution of the marital property (see Domestics Relations Law § 236 [B] [6] [e] [1] [a]-[o]; Pfister v Pfister, 146 AD3d at 1137-1138). The court also determined that the wife could support herself through her Social Security income and food stamps, her ownership of the marital residence, her support from family and friends and her ability to work. This deviation is supported by the record, especially considering that the wife conceded that the spousal support payments were for the mortgage and the mortgage has since been paid in full. Based on these facts, we do not find that Supreme Court abused its discretion in declining to award maintenance to the wife (see generally Harris v Schreibman, 200 AD3d at 1120-1121; Hughes v Hughes, 198 AD3d at 1173).[FN1]
The wife also contends that Supreme Court erred in denying her any portion of the husband's retirement accounts because the court did not consider certain statutory factors outlined in Domestic Relations Law § 236 (B) (5) (d), and, instead, only considered that the parties were physically separated when the husband commenced employment and that the wife was awarded the marital residence. "It is well established that equitable distribution of marital property does not necessarily mean equal, and Supreme Court has substantial discretion in fashioning an award of equitable distribution" (Allen v Allen, 179 AD3d 1318, 1319 [2020] [internal quotation marks and citations omitted]; see Martin v Martin, 178 AD3d 1339, 1341 [2019]). Domestic Relations Law § 236 (B) (5) (d) sets forth the statutory factors that must be weighed and directs that "the court shall set forth the factors it considered and the reasons for its decision and such may not be waived" (Domestic Relations Law § 236 [B] [5] [g]). However, "[the factors] do not have to be specifically cited when the factual findings of the court otherwise adequately articulate that the relevant statutory factors were considered" (Ramadan v Ramadan, 195 AD3d 1174, 1175 [2021] [internal quotation marks and citation omitted]; see Lurie v Lurie, 94 AD3d 1376, 1378 [2012]). Notably, "[the court's] award will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors under Domestic Relations Law § 236 (B) (5) (d)" (Martin v Martin, 178 AD3d at 1341 [internal quotation marks and citations omitted]).
The record reveals that, as a result of his employment at the Golub Corporation from 2005 to 2016, the husband received retirement benefits, including a 401(k) plan and a pension. [*5] As of June 2018, defendant's 401(k) account had just over $10,000. According to the husband, this account reflects his accumulated earnings while employed at the Golub Corporation, and he does not have another 401(k) account nor any IRA accounts. He also has a pension plan that will pay him $500 per month, contingent on the stock, when he reaches the age of 65. The husband testified that he did have two IRA accounts in the 1980s, which totaled $24,000, but those accounts no longer exist as he cashed them out in 1991 after he left the marital residence. In its order, Supreme Court explicitly stated each factor it must consider under Domestic Relations Law § 236 (B) (5) (d) and then analyzed each factor that was relevant, while indicating what factors it deemed irrelevant to the analysis.
After analyzing each factor, Supreme Court looked at each asset to determine what distribution would be appropriate and found it appropriate to award the entirety of the retirement assets to the husband. With that being said, the court awarded the entire marital residence to the wife and any other property not discussed was distributed to "the party holding title or possession." In support of its determination, the court stated that "it is appropriate, equitable and just to award the husband [the retirement] assets in light of the fact that the parties had been physically and financially separated for at least 14 years when the husband started working at Golub [Corporation] and in light of the [c]ourt's award of the marital residence to the wife without any distribution to the husband of a portion of the equity." Although the court did not explicitly state which factors contributed to the decision regarding the retirement assets, the order expressly states each factor and assesses its relevance against the facts and circumstances of the case, and it is clear from the order that the parties' respective incomes, the duration of the marriage and other financial circumstances were heavily considered (see Ramadan v Ramadan, 195 AD3d at 1175). Based on the foregoing, it cannot be said that the court abused its discretion in awarding the husband 100% of his retirement assets (see Domestic Relations Law § 236 [B] [5] [d]). We have examined the wife's remaining contentions and, to the extent not specifically addressed herein, find them to lack merit.
Egan Jr., J.P., Lynch and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order and judgment are affirmed, without costs.



Footnotes

Footnote 1: The wife, citing to Domestic Relations Law § 236 (B) (9) (b), contends that Supreme Court erred in modifying the spousal support order without a showing of a substantial change in circumstances. This assertion is without merit. This was not a proceeding in Family Court to modify the support order (see Family Ct Act § 412 [10]), but an action for divorce in Supreme Court. Moreover, "[u]pon the entry of the divorce judgment by Supreme Court, all prior support orders of Family Court became null and void in the absence of Supreme Court's adoption and incorporation of those orders in the divorce judgment" (Matter of Lanese v Lanese, 210 AD2d 755, 756 [1994], lv denied 85 NY2d 805 [1995]; see Family Ct Act § 412 [1] [c]).