McGovern v McGovern (2023 NY Slip Op 03956)

McGovern v McGovern

2023 NY Slip Op 03956

Decided on July 27, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 27, 2023

534258
[*1]Mary Kathleen McGovern, Appellant,
v
Joseph P. McGovern, Respondent.

Calendar Date:May 31, 2023

Before:Garry, P.J., Clark, Pritzker, Reynolds Fitzgerald and Ceresia, JJ.

Nicole R. Redmond, LLC, Delmar (Nicole R. Redmond of counsel) and Stephen L. Molinsek, LLC, Albany (Stephen L. Molinsek of counsel), for appellant.
Joseph P. McGovern, Albany, respondent pro se.

Clark, J.
Appeal from a judgment of the Supreme Court (Christina L. Ryba, J.), entered October 14, 2021 in Albany County, ordering, among other things, equitable distribution of the parties' marital property, upon a decision of the court.
Plaintiff (hereinafter the wife) and defendant (hereinafter the husband) were married in 1997 and have two children (born in 1999 and 2002). In 2014, the husband abandoned the martial residence, but the parties reconciled until 2017, when the husband again left the marital residence, and the wife commenced this action for divorce. The wife thereafter moved for an order of temporary support (hereinafter the pendente liteorder), requesting temporary maintenance, child support, counsel fees and a portion of the fee to hire a forensic accountant to review the husband's finances. Based on the parties' expenses, Supreme Court (Melkonian, J.) imputed an income of $300,000 to the husband and ordered that the husband pay the wife $2,000 a month in maintenance and $3,275.95 a month in child support. The court also ordered the husband to pay the wife $7,100 in counsel fees and $5,000 toward the retention of the wife's forensic accountant. Following a nonjury trial, Supreme Court (Ryba, J.) found that the pendente lite order was based on erroneous representations in the parties' respective statements of net worth, imputed an income of $85,000 to the husband and recalculated the child support and maintenance awards. The court awarded the wife the marital residence and ordered the husband to pay the wife a distributive award of $419,517.45 — equivalent to 45% of the value of his businesses, minus certain credits such as his overpayment of pendente lite child support and maintenance. The court also ordered him to pay child support for the youngest child until her emancipation. The wife appeals.
Initially, the wife argues that Supreme Court erred in applying the missing witness rule against her as a result of her failure to call a forensic accountant as a witness. First, contrary to the wife's argument, applicability of the missing witness rule is not constrained to criminal cases (see e.g. Warner v Kain, 186 AD3d 1844, 1848 [3d Dept 2020]; Gagnon v St. Clare's Hosp., 58 AD3d 960, 961 [3d Dept 2009]). Second, and more importantly, Supreme Court did not apply the missing witness rule here. Although the court expressed its dissatisfaction with the wife's decision to not call a forensic accountant to explain the husband's finances, it explicitly stated that it was not drawing a negative inference against her. Instead, in light of the wife's failure to explain the financial records she entered into evidence and their impact on the parties' finances, the court simply assessed the testimony and evidence regarding the husband's finances.
The wife also contends that the pendente lite order, which imputed a $300,000 annual income to the husband, accurately assessed his income and should have been followed by Supreme Court, as he underreported [*2]his income on his W-2 forms and other documents. "A court is permitted to impute income to a party based on the party's earning capacity, as long as the court articulates the basis for imputation and the record evidence supports the calculations" (Yezzi v Small, 206 AD3d 1472, 1474 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; see King v King, 202 AD3d 1383, 1384-1385 [3d Dept 2022]). "[The] court is not bound by a party's account of his or her own finances, and where a party's account is not believable, the court is justified in finding a true or potential income higher than that claimed. The trial court is afforded considerable discretion in determining whether to impute income to a party, and the court's credibility determinations will be accorded deference on appeal" (Harris v Schreibman, 200 AD3d 1117, 1121 [3d Dept 2021] [internal quotation marks and citations omitted]; see Yezzi v Small, 206 AD3d at 1475).
There is ample support in the record for Supreme Court's decision to impute an annual income of $85,000 to the husband, rather than the $300,000 the wife claimed. The husband owned three businesses: McGovern Law, McGovern Enterprises, LLC and 970 Broadway, LLC. McGovern Enterprises and 970 Broadway owned and rented out multiple residential apartment buildings, mainly located in downtown Albany, and McGovern Law primarily provided legal services to those entities. McGovern Enterprises employed one individual other than the husband, a bookkeeper; otherwise, maintenance and upkeep on the buildings were performed by the husband or independent contractors. While the husband's W-2s from 2012 through 2016 showed an average annual income of roughly $56,000 — well below $85,000 — the wife made transfers into the parties' checking account between 2012 and 2016 to pay the household expenses — on average, roughly $81,000 a year. The testimony showed that the husband was responsible for paying all the household expenses during that time, implying that this sum was the approximate income needed to support the parties' lifestyle. While McGovern Enterprises collected $367,380 in rent in 2018 and $340,596 in 2017, and 970 Broadway collected $331,830 in total rents between 2017 and 2020, this money was not the husband's income — these were businesses with expenses. Further, Supreme Court credited testimony by the husband's bookkeeper that the husband's businesses had a fixed annual operating cost of roughly $150,000, as well as variable costs such as repairs and maintenance. The wife claimed that the husband was hiding money in his complicated business network, but her failure to put forth a forensic accountant was critical. While the records of the husband's financial dealings show that he was engaged in complex and possibly unorthodox business practices, they do not, on their own, show that he was hiding income that should have been imputed to him. Therefore, considering the annual household expenses, the operating costs of [*3]the husband's businesses and the wife's failure to explain the meaning of the voluminous financial records she presented, there is no basis to find that Supreme Court abused its discretion when it imputed an $85,000 annual income to the husband (see Yezzi v Small, 206 AD3d at 1475-1476; Harris v Schreibman, 200 AD3d at 1122; Pfister v Pfister, 146 AD3d 1135, 1137 [3d Dept 2017]).
Next, the wife argues that the value of her 45% distributive award should have been higher, as McGovern Enterprises should have been valued at $2,060,000, the sum of the appraised value of the buildings it owned, rather than the $1,280,666 valuation Supreme Court determined based on testimony and a report by the husband's tax expert.[FN1] "[T]here is no uniform rule for fixing the value of a going business for equitable distribution purposes. Indeed, valuation is an exercise properly within the fact-finding power of the trial courts, guided by expert testimony" (Burns v Burns, 84 NY2d 369, 375 [1994] [internal citation omitted]; see Cervoni v Cervoni, 141 AD3d 918, 920 [3d Dept 2016]). Supreme Court found that the wife provided only the valuation of the buildings themselves, which did not equate to a valuation of McGovern Enterprises as a whole. Instead, the court relied on the tax expert's testimony that, while McGovern Enterprises would recoup $1,984,000 in a hypothetical sale of its properties, it would incur $703,334 in taxes from such a sale, leaving the value of the business at the difference, $1,280,666. The expert's calculations, accounting both for the appraised value of McGovern Enterprises' buildings and the costs of liquidating these assets, painted a more complete picture of the business's value than did the mere buildings' appraised values. As the wife "presented no expert testimony that would support a different valuation," and Supreme Court credited the expert's report, the wife failed to prove that McGovern Enterprises was worth more than $1,280,666 (Mehlenbacher v Mehlenbacher, 199 AD3d 1304, 1306 [4th Dept 2021] [internal quotation marks and citation omitted]; see Hiatt v Tremper-Hiatt, 6 AD3d 1014, 1015 [3d Dept 2004]).
In addition, the wife asks this Court to reverse Supreme Court's determination that the husband's self-directed IRA, which included 970 Broadway, was his separate property. There is a "presumption that all property acquired during the marriage is marital. The burden then rests with the party asserting the separate property claim to rebut the presumption" (Szypula v Szypula, 211 AD3d 156, 158 [3d Dept 2022] [citation omitted]; see Mula v Mula, 131 AD3d 1296, 1299 [3d Dept 2015]).Separate property includes "property acquired before marriage," as well as "property acquired in exchange for . . . separate property" (Domestic Relations Law § 236 [B] [d] [1], [3]; see Seale v Seale, 149 AD3d 1164, 1167-1168 [3d Dept 2017]). The testimony of the husband and the bookkeeper, which Supreme Court found credible, showed that the husband's self-directed [*4]IRA was established using funds transferred from an account he established in 2005, which itself contained funds from an account he created in 1983, prior to the parties' marriage. While the husband did transfer money between his other accounts and 970 Broadway, the record evidence demonstrated that those sums were rent owed to 970 Broadway.[FN2] Further, the husband's testimony, as well as his bank records, showed that he made no contributions to his self-directed IRA during the marriage. Therefore, Supreme Court did not err in determining that his self-directed IRA, which included 970 Broadway's properties, was the husband's separate property, as he showed that the properties owned by 970 Broadway were acquired with premarital assets (see Seale v Seale, 149 AD3d at 1167; Mula v Mula, 131 AD3d at 1300-1301).[FN3]
As to maintenance, the wife challenges Supreme Court's determination that she was not entitled to maintenance, claiming that she should have been awarded $3,108 in monthly maintenance for eight years, retroactive to the date of commencement, based on the husband's $300,000 imputed income and the marital standard of living. "The amount and duration of a maintenance award are addressed to the sound discretion of the trial court[ ] and will not be disturbed provided that the statutory factors and the parties' predivorce standard of living are considered. The court need not articulate every factor it considers, but it must provide a reasoned analysis of the factors it ultimately relies upon in awarding or declining to award maintenance" (Louie v Louie, 203 AD3d 1520, 1521 [3d Dept 2022] [internal quotation marks and citations omitted]; see Giuliano v Giuliano, 203 AD3d 1473, 1474-1475 [3d Dept 2022]). "When a pendente lite award of maintenance is found at trial to be excessive or inequitable, the [trial c]ourt may make an appropriate adjustment in the equitable distribution award" (Johnson v Chapin, 12 NY3d 461, 466 [2009] [citations omitted]; see Giannuzzi v Kearney, 127 AD3d 1350, 1351 [3d Dept 2015]).
The record supports Supreme Court's determination that the wife was not entitled to maintenance. The wife was employed at the time of trial, earning $76,000 a year with healthcare benefits, and she was awarded the marital residence, which was fully paid off other than a $100,000 line of credit taken out on the property by the parties.[FN4] As stated earlier, the husband's imputed income was $85,000, and the evidence showed that he had taken a $200,000 loan from 970 Broadway to pay for the pendente lite maintenance. Based upon Supreme Court's proper consideration of the factors and the totality of the circumstances herein — including the distributive award of $419,517.45 — it did not abuse its discretion in declining to award maintenance to the wife (see Giuliano v Giuliano, 203 AD3d at 1474-1475; King v King, 202 AD3d at 1386-1387; Hughes v Hughes, 200 AD3d 1404, 1406-1407 [3d Dept 2021]).
As to child support, the wife claims that Supreme Court improperly [*5]deviated from the Child Support Standards Act by using $85,000, rather than $300,000, as the husband's income and that it improperly retroactively modified his child support obligations. "The Child Support Standards Act provides a three-step method for calculating child support. The first step is to compute combined parental income. Second, the combined parental income is multiplied by a designated percentage based upon the number of children to be supported. Finally, that amount is then allocated between the parents by applying each parent's respective portion to the total income" (Hughes v Hughes, 200 AD3d at 1408 [internal quotation marks, brackets and citations omitted]; see Domestic Relations Law § 240 [1-b]; Donna E. v Michael F., 185 AD3d 1179, 1180 [3d Dept 2020]). "[T]here is a strong public policy against restitution or recoupment of support overpayments" (Johnson v Chapin, 12 NY3d at 466 [internal quotation marks and citation omitted]; see Johnson v Johnson, 172 AD3d 1654, 1657 [3d Dept 2019]). Nevertheless, "a trial court has the authority to adjust an equitable distribution award where it is determined after trial that a temporary maintenance award was excessive" (Johnson v Johnson, 172 AD3d at 1657; see Fox v Fox, 306 AD2d 583, 584 [3d Dept 2003], lv dismissed 1 NY3d 622 [2004]).
Supreme Court found that, based on the husband's imputed $85,000 yearly salary and the mother's $76,000 yearly salary, the husband was responsible for $1,635.36 monthly in child support until the oldest child's emancipation in May 2020, and, following her emancipation, $1,112.05 monthly for support of the youngest child. However, because the husband had paid his pendente lite child support obligation, premised on an improperly-imputed income of $300,000, until August 2021, well past the oldest child's emancipation, the court determined that he was entitled to an $86,552.97 credit for child support. The court then found that this overpayment covered the husband's obligation for both children's college expenses but not for their unpaid medical expenses — $5,292.45. Based on these calculations, the court subtracted the credit from the wife's distributive award and ordered the husband to pay the children's unpaid medical expenses and $1,112.05 in monthly child support for the youngest child until her emancipation.
As previously discussed, Supreme Court properly imputed the husband with an annual income of $85,000 (see Yezzi v Small, 206 AD3d at 1475-1476; Harris v Schreibman, 200 AD3d at 1122). Using that sum, the court followed the three-step method for calculating child support by plugging the parties' annual incomes into the formula and calculating a monthly payment for the time before and after the oldest child's emancipation, and then ordering the husband to pay the second amount monthly until the youngest child is emancipated (see Allen v Allen, 179 AD3d 1318, 1321-1322 [3d Dept 2020]; compare Hughes v Hughes, 200 AD3d at 1408-1409; Elizabeth B. v Scott [*6]B., 189 AD3d 1833, 1837-1838 [3d Dept 2020]). Having reviewed the record evidence, we find no error in the court's child support calculations or its decision to credit the husband's child support overpayments (see Johnson v Chapin, 12 NY3d at 466; Johnson v Johnson, 172 AD3d at 1657; Fox v Fox, 306 AD2d at 584).
Finally, the wife argues that Supreme Court erred in declining to award her counsel fees. "Although there is a rebuttable presumption that counsel fees shall be awarded to the less monied spouse, in exercising its discretionary power to award counsel fees, a court should review the financial circumstances of both parties together with all the other circumstances of the case, which may include the relative merit of the parties' positions" (Hickman v Hickman, 204 AD3d 1116, 1119 [3d Dept 2022] [internal quotation marks and citations omitted]; see Weaver v Weaver, 198 AD3d 1140, 1146 [3d Dept 2021]). However, this presumption can be rebutted given the amount of "the equitable distribution, maintenance and substantial interim award" (Gifford v Gifford, 132 AD3d 1123, 1126 [3d Dept 2015]; accord Macaluso v Macaluso, 145 AD3d 1295, 1298 [3d Dept 2016]). "[A] court retains the discretion to direct one party to pay the other party's counsel fees and, absent an abuse of discretion, its determination will not be disturbed" (St. Denny v St. Denny, 185 AD3d 1246, 1248 [3d Dept 2020]; accord Hughes v Hughes, 200 AD3d at 1411). In light of the size of the wife's distributive award, the fact that her yearly income was comparable to the husband's and the interim relief she was awarded, including an improperly high temporary maintenance award and fees for an expert witness she never called, Supreme Court did not abuse its discretion in denying the wife's request for counsel fees (see Hickman v Hickman, 204 AD3d at 1119; Macaluso v Macaluso, 145 AD3d at 1298; Gifford v Gifford, 132 AD3d at 1126). The wife's remaining contentions, to the extent not expressly addressed herein, have been examined and found to lack merit.
Garry, P.J., Pritzker, Reynolds Fitzgerald and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Insofar as the husband requests that this distributive award be reduced, as the wife admittedly had no role in developing the business, this Court is constrained by the husband's failure to file a notice of appeal. Because he failed to do so, this Court cannot grant him the affirmative relief that he seeks (see Hecht v City of New York, 60 NY2d 57, 60 [1983]; Matter of Susan UU. v Scott VV., 119 AD3d 1117, 1119 n 4 [3d Dept 2014]).

Footnote 2: McGovern Law collected all credit card rent payments on behalf of McGovern Enterprises and 970 Broadway and then transferred the payments to the corresponding entity.
Footnote 3: Inasmuch as the wife argues that the husband made improper post-commencement transactions involving marital property, including acquiring multiple buildings through 970 Broadway, purchasing a pickup truck with funds from the self-directed IRA and loaning himself $200,000 in rent from 970 Broadway despite Supreme Court's order that neither party engage in transactions involving their property, these transactions all involved the husband's separate property and, even if they were improper, did not diminish the value of the wife's 45% distributive award.

Footnote 4: The wife argues that it was inappropriate for Supreme Court to hold her responsible for half of this line of credit and deduct it from her award, asserting that the husband forged her notarized signature on the loan document and that she was unaware of the loan's existence. Despite listing a handwriting expert on her pretrial witness list, the wife provided no evidence for this contention at trial beyond her own testimony that the signature on the document was not her own, which the court did not find credible. Deferring to the court's credibility determination, we find no error in the wife being held responsible for half of this $100,000 loan (see Atlantic Specialty Ins. Co. v Landmark Unlimited, Inc., 214 AD3d 472, 472-473 [1st Dept 2023]; MTGLQ Invs., L.P. v Vazquez, 190 AD3d 616, 617 [1st Dept 2021]; Van Valen v Ferraro, 114 AD2d 621, 622 [3d Dept 1985]).