Breen v Breen (2023 NY Slip Op 06566)

Breen v Breen

2023 NY Slip Op 06566

Decided on December 21, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 21, 2023

533526 534233
[*1]James L. Breen, Appellant,
v
Teresa C. Breen, Defendant.

Calendar Date:October 18, 2023

Before:Clark, J.P., Aarons, Pritzker, Ceresia and Fisher, JJ.

James L. Breen, Port Henry, appellant pro se.

Clark, J.P.
Appeals (1) from an order of the Supreme Court (James E. Doern, J.H.O.), entered May 13, 2021 in Saratoga County, which, among other things, calculated plaintiff's maintenance obligation, and (2) from a judgment of said court (Vincent W. Versaci, J.), entered September 23, 2021 in Saratoga County, granting a judgment of divorce.
Plaintiff (hereinafter the husband) and defendant (hereinafter the wife) were married in 1984 and have two adult children. The husband left the marital residence around March 2017, and he commenced the instant matrimonial action thereafter. Following some motion practice by the parties, Supreme Court (Pelagalli, J.) issued a pendente lite order in January 2020, among other things, directing that the husband pay the wife temporary spousal maintenance and granting the wife exclusive use and possession of the marital residence. The parties, each represented by counsel, proceeded to trial on January 31, 2020, and the court recused itself thereafter. After the matter was reassigned, the parties consented to Supreme Court (Jensen, J.) reading the January 2020 transcript and continuing the trial. Prior to such continuation, the husband — an attorney himself — fired his counsel and proceeded pro se for the remainder of the proceedings. Following the second day of trial on July 30, 2020, Supreme Court issued an order of reference transferring the matter to Judicial Hearing Officer James Doern (hereinafter the JHO), and, in lieu of restarting the trial, the parties consented to the JHO reading the January 2020 and July 2020 trial transcripts and continuing the trial therefrom. After eight additional trial days, the JHO issued a decision and order, entered in May 2021, determining, among other things, the issues of spousal maintenance and equitable distribution. That order was then incorporated into the judgment of divorce issued by Supreme Court (Versaci, J.). The husband appeals from the May 2021 order and the subsequent judgment of divorce.[FN1]
Initially, we must comment on the state of the record on appeal. The husband first filed a brief and a two-volume proposed record on appeal in January 2022; after the wife failed to file a brief, the matter was scheduled for our September 2022 term. This Court then informed the husband that the two-volume record on appeal was incomplete, as it included transcripts for only four of the 10 trial days. In July 2022, after the husband failed to supplement the record, the appeal was removed from our calendar, and the husband was given another opportunity to perfect his appeal with a complete record. In late September 2022, the husband submitted a new brief and a four-volume record on appeal. Soon after, the wife, represented by counsel, sought an extension to file a respondent's brief, which relief the husband opposed; after motion practice, the wife was given until March 2023 to respond. The wife again failed to file a brief, and the appeal was scheduled for the October 2023 term. Despite the husband [*2]having filed four volumes, the record on appeal remains deficient. Although transcripts for the 10 days of trial are now included, the transcripts are missing portions of the testimony, most obviously, the cross-examination of the wife during the husband's case-in-chief and the beginning of his own direct examination. Further, the husband failed to include the wife's papers opposing his motions for pendente lite relief, as well as various exhibits. Although these deficiencies exist, this record is sufficient to allow us to review the husband's arguments on appeal (compare Matter of County of Broome [Cadore], 212 AD3d 1012, 1014 [3d Dept 2023], appeals dismissed 39 NY3d 1116 [2023], 40 NY3d 954 [2023], 40 NY3d 954 [2023]).
Turning to the merits, the husband's contention that Supreme Court (Doern, J.H.O.) erred when it used one method to impute income to him and a different method to impute income to the wife lacks merit, as the parties had vastly different employment and income histories (see Matter of Hall v Davis, 176 AD3d 1374, 1376 [3d Dept 2019]). A court is not bound by a party's representations of his or her finances and, instead, may exercise its considerable discretion to impute income to a party based upon, among other things, that party's education, employment history and demonstrated earning potential, and we defer to the trial court's underlying credibility determinations (see McGovern v McGovern, 218 AD3d 1067, 1072 [3d Dept 2023]; King v King, 202 AD3d 1383, 1385 [3d Dept 2022]; Mack v Mack, 169 AD3d 1214, 1217 [3d Dept 2019]). By the conclusion of the trial, both parties were unemployed. In deciding to impute the wife's income at $15,000 based upon her most recent tax return, the court considered that the wife had been a homemaker since the birth of the parties' oldest child in 1991, that her teaching certification had long lapsed and that she had only held part-time jobs outside the home on a sporadic basis, and we find no abuse of discretion in such decision (see Miszko v Miszko, 163 AD3d 1204, 1207 [3d Dept 2018], lv denied 33 NY3d 907 [2019]; cf. Yezzi v Small, 206 AD3d 1472, 1476 [3d Dept 2022]; Sadaghiani v Ghayoori, 83 AD3d 1309, 1312 [3d Dept 2011]). As to the husband, the record is sparse regarding his income from 1987 until 2014, during which time he engaged in the private practice of law and worked as a village attorney and a village justice. In 2014, the husband accepted a position with a state agency, initially earning an annual salary of $90,000, and climbing to $106,503 by his departure in June 2019. At that time, the husband accepted a position with a different state entity earning an annual salary of $150,000. He concedes that he was terminated for cause from that position during the pendency of the trial. Despite a showing of such earning capacity, the court noted the husband's retirement age and declined to impute that income to him. Rather, the court properly exercised its discretion in using New York State Department [*3]of Labor statistics to impute $99,281, the median wage for an attorney in the Capital Region, as income to the husband (cf. Matter of Kasabian v Chichester, 72 AD3d 1141, 1142 [3d Dept 2010], lv denied 15 NY3d 703 [2010]).
The husband also argues that Supreme Court erred in determining the duration of his spousal maintenance obligations and in failing to give him a tax impact credit.[FN2] According to the guidelines, for a marriage lasting over 20 years, the duration of any spousal maintenance payments ordered should be between 35% and 50% of the length of the marriage (see Domestic Relations Law § 236 [B] [6] [f] [1]). Ultimately, the sum and duration of spousal maintenance is left to the sound discretion of the trial court and will not be disturbed so long as the court considered, among other things, the age and health of the parties, their respective earning capacities and their predivorce standards of living (see Domestic Relations Law § 236 [B] [6] [e] [1]; [f] [2], [4]; McGovern v McGovern, 218 AD3d at 1072; Westbrook v Westbrook, 212 AD3d 1014, 1017 [3d Dept 2023]). The court expressly deviated downward from the guidelines — which suggested that the duration of maintenance for this 34-year marriage should be between 11.9 and 17 years — due to, among other reasons, the parties' ages, their limited future earning potentials and the tax impact of the federal Tax Cuts and Jobs Act of 2017 (Pub L 115-97, § 11051, 131 US Stat 2089). Our review of this record confirms that the court considered the appropriate factors (see Domestic Relations Law § 236 [B] [6] [e] [1] [a-o]), and we do not find the decision to direct the husband to pay the wife spousal maintenance for 10 years to be an abuse of discretion (see Louie v Louie, 203 AD3d 1520, 1521 [3d Dept 2022]).[FN3]
In challenging the equitable distribution award, the husband first asserts that Supreme Court should have classified a vacant lot in the hamlet of Port Henry, located in the Town of Moriah, Essex County as his separate property. The classification of property as either marital property or separate property presents a question of law (see Hughes v Hughes, 198 AD3d 1170, 1171 [3d Dept 2021]; Mack v Mack, 169 AD3d at 1215). Property obtained during a marriage is presumptively classified as marital property, which presumption must be rebutted by the party seeking to classify an asset as separate property (see Louie v Louie, 203 AD3d at 1522-1523; Mack v Mack, 169 AD3d at 1215; compare Domestic Relations Law § 236 [B] [1] [c], with Domestic Relations Law § 236 [B] [1] [d]). The record on appeal reveals that, throughout their lengthy marriage, the parties obtained title to several parcels of real property, including the vacant lot at issue. Although the wife initially appeared to assert that the vacant lot was purchased by the husband's father, we defer to the court's credibility determination crediting the wife's subsequent testimony that she had been confused and that her earlier assertion referred [*4]to a different parcel of land owned by the husband nearby in the Town of Moriah. The deed for the vacant lot was admitted into evidence and shows that, in 1999, the husband purchased this lot from four individuals to whom he shares no relation. Because the husband purchased the vacant lot during the marriage, it is presumptively classified as marital property, and, deferring to the court's credibility determinations, we find that the husband failed to present evidence to overcome such presumption (see Fields v Fields, 15 NY3d 158, 166-168 [2010]; Prokopov v Doskotch, 166 AD3d 1408, 1409 [3d Dept 2018]).
As to the equitable distribution award, Supreme Court "has substantial discretion to fashion such awards based on the circumstances of each case, and the determination will not be disturbed absent an abuse of discretion or failure to consider the requisite statutory factors" (Westbrook v Westbrook, 212 AD3d at 1018 [internal quotation marks and citation omitted]; see Johnson v Johnson, 172 AD3d 1654, 1658 [3d Dept 2019]). Although the court need not specifically cite the statutory factors, its factual findings should adequately reflect its consideration of the factors outlined in Domestic Relations Law former § 236 (B) (5) (d) (1-15) (see Ramadan v Ramadan, 195 AD3d 1174, 1175 [3d Dept 2021]). Importantly, equitable distribution of marital property need not be equal (see King v King, 202 AD3d at 1387; Allen v Allen, 179 AD3d 1318, 1319 [3d Dept 2020]).
Following 10 days of trial, Supreme Court was tasked with distributing, among other things, five parcels of real property (including the marital residence and a residence located in Port Henry), nine vehicles and a plethora of tangible personal property, as well as other marital assets and debts. The court considered the length of the marriage and the manner in which the parties conducted their finances throughout that time. When the husband began attending law school early in the marriage, the wife worked two jobs to support the parties. Then, in 1991, after the husband began practicing law and the birth of the parties' first child, the wife became a homemaker, and she remained in that role throughout the remainder of the marriage. The wife also held a number of part-time jobs on a sporadic basis, and she would help the husband at his law practice by performing secretarial duties as needed. During the marriage, the parties also invested in several parcels of real property throughout the state. To the extent that the husband contends that awarding the wife the marital residence while awarding him the Port Henry residence was not an equitable result, such contention ignores the totality of the equitable distribution, which awarded him four out of the parties' five parcels of real property and the majority of the parties' vehicles. Although the husband takes issue with the distribution of certain personal property located in the parties' residences, we note that the record is devoid of any proof as to [*5]the value of such property and that the court had wide discretion in determining its distribution (see Iwasykiw v Starks, 179 AD3d 1485, 1486 [4th Dept 2020]; Mula v Mula, 131 AD3d 1296, 1301 [3d Dept 2015]). The husband also argues about two loans that were assigned to him as marital debt. However, the record supports the court's finding that the first loan was taken in connection with the husband's separate property; as to the second loan, the husband agreed to assume such debt during his testimony, and he cannot now complain that the debt was assigned to him. Nevertheless, having reviewed the record on appeal, the court expressly considered the parties' economic and noneconomic contributions during the marriage, the duration of the marriage, the parties' ages and health and the parties' prospective financial circumstances, among other things. In light of the court's consideration of the appropriate factors, and given the substantial discretion involved in determining the manner in which to divide marital assets, we find no abuse of discretion upon which to disturb this equitable distribution award (see McGovern v McGovern, 218 AD3d at 1070-1071; King v King, 202 AD3d at 1387-1389; Mula v Mula, 131 AD3d at 1300-1301).
Lastly, to the extent that the husband preserved his argument that the JHO was biased against him, we find that such argument lacks merit. The husband's conduct throughout the trial was inappropriate and unprofessional. Although the JHO occasionally became impatient with the animosity between the husband and the wife's counsel, the record on appeal reveals no bias on behalf of the JHO (see McAuliffe v McAuliffe, 209 AD3d 1119, 1120-1121 [3d Dept 2022]; Fecteau v Fecteau, 97 AD3d 999, 1002 [3d Dept 2012]). We have reviewed the husband's remaining contentions and, to the extent not expressly addressed herein, find them to lack merit.
Aarons, Pritzker, Ceresia and Fisher, JJ., concur.
ORDERED that the appeal from the order is dismissed, without costs.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: The husband's right to appeal from the May 2021 order terminated upon the entry of the judgment of divorce, but his appeal from said judgment brings up for review his arguments pertaining to said order (see CPLR 5501 [a] [1]; Calcagno v Graziano, 200 AD3d 1248, 1250 n 1 [3d Dept 2021]).

Footnote 2: Contrary to the husband's assertion, Supreme Court correctly calculated the husband's spousal maintenance obligation based on the statutory formula (see Domestic Relations Law § 236 [B] [6] [c] [2] [a-g]).

Footnote 3: The husband's challenges to the propriety of the temporary spousal maintenance directed by the pendente lite order were rendered moot by Supreme Court's May 2021 order, which superseded the husband's spousal maintenance obligation and which order was incorporated into the appealed-from judgment of divorce (see Headwell v Headwell, 198 AD3d 1130, 1131-1132 [3d Dept 2021]; Batson v Batson, 277 AD2d 750, 751 [3d Dept 2000]; see also Giannuzzi v Kearney, 127 AD3d 1350, 1351 [3d Dept 2015]).