Matter of Zwicklbauer v Hannigan (2024 NY Slip Op 05921)

Matter of Zwicklbauer v Hannigan

2024 NY Slip Op 05921

Decided on November 27, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:November 27, 2024

CV-22-1989
[*1]In the Matter of Jessica Zwicklbauer, Respondent,
v
Trevor Hannigan, Appellant.

Calendar Date:October 15, 2024

Before:Clark, J.P., Pritzker, Lynch, Fisher and Powers, JJ.

Meth Law Offices, PC, Chester (Michael D. Meth of counsel), for appellant.
Danielle Neroni Reilly, Albany, for respondent.

Lynch, J.
Appeal from an order of the Family Court of Albany County (Susan M. Kushner, J.), entered September 21, 2022, which, in a proceeding pursuant to Family Ct Act article 4, denied respondent's objections to an order of a Support Magistrate.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the parents of a child (born in 2019).[FN1] The parties were never married and the father has two older children with his wife, from whom he is apparently separated. By consent order entered in the Family Court of Orange County in August 2019, following an appearance on the day after the subject child was born, the father was directed to pay his wife $2,800 per month in child support and $2,200 per month in spousal support.
In October 2019, the mother filed a petition for child support against the father pertaining to the subject child. A temporary order was issued directing the father to pay child support to the mother on an interim basis and a fact-finding hearing was eventually held in 2022, during which only the mother testified. After the hearing, a Support Magistrate (Clancy, S.M.) ordered the father to pay $2,400 per month in basic child support, plus an additional $1,179.24 per month toward childcare bills and health insurance premiums. The father's objections to the Support Magistrate's order were subsequently reviewed and denied by Family Court in an order issued in September 2022 (see Family Ct Act § 439 [e]). The father appeals.
We affirm. Following the three-step method set forth in Family Ct Act § 413 for calculating a noncustodial parent's child support obligation when the combined parental income exceeds the statutory cap (see Matter of Cassano v Cassano, 85 NY2d 649, 653 [1995]), the Support Magistrate first calculated the parties' combined parental income to be $253,982.54 — finding that the mother's adjusted gross annual income, after subtracting FICA taxes, was $53,906.55 and the father's gross annual income was $200,075.99. Under the second step, the Support Magistrate applied the statutory percentage of 17% to the parties' incomes up to the statutory cap — $163,000 at the time of this proceeding (see Social Services Law § 111-i [2] [b]) — and calculated the presumptive child support obligation to be $2,309 per month, with the mother's pro rata share amounting to 21% and the father's pro rata share amounting to 79%. The Support Magistrate proceeded to the third step of the analysis and, after applying the factors set forth in Family Ct Act § 413 (1) (f), "determined that [the father's] basic child support obligation shall go above the statutory cap." The Support Magistrate then applied the statutory percentage of 17% to the combined parental income in excess of the statutory cap — i.e., $90,982.54 — for a combined basic payment of $3,598.09 per month, noting that the father's pro rata share of that amount was $2,842 per month. The Support Magistrate determined that, under the circumstances, the father's basic child [*2]support obligation should be $2,400 per month — retroactive to October 7, 2019 net of credits for payments made under the temporary order — with an additional $1,179.24 per month for childcare payments and health care premiums.
In challenging this child support award, the father argues that the Support Magistrate improperly imputed income to him based upon the mother's uncorroborated testimony that he made $300,000 per year. The record, however, shows that the Support Magistrate did not impute income to the father based upon the mother's testimony but calculated the father's income at $200,075 based upon information gleaned from his individual tax returns, W-2 statements and corporate tax filings.[FN2] We find no basis to disturb this calculation (see Matter of Henry v Bell, 185 AD3d 1168, 1170 [3d Dept 2020]).
The father's argument that the Support Magistrate erroneously failed to consider his support obligations to his other children in calculating his income is also unavailing. Although "amounts actually paid by a parent pursuant to a court order or written agreement for the support of a spouse or child who are not the subjects of the instant proceeding shall be deducted from the parent's income for child support purposes" (Matter of Mary V.B. v James X.S., 226 AD2d 714, 715 [2d Dept 1996] [emphasis added]; see Family Ct Act § 413 [1] [b] [5] [vii] [B], [D]), as noted by the Support Magistrate in her written findings of fact, the father did not provide any documentary proof showing that he actually made the child and spousal support payments set forth in the August 2019 consent order.
Although the father affirmed in a November 6, 2019 sworn financial disclosure affidavit that he paid $2,200 in spousal support and $2,800 in child support, and in a February 16, 2022 sworn financial disclosure affidavit that he pays child support pursuant to the August 2019 consent order, he offered no corresponding bank statements or other records at the hearing confirming as much, and no such documentation is included in the record. He also opted not to testify at the fact-finding hearing, precluding direct inquiry into this issue. That decision is particularly telling considering the mother's testimony during cross-examination that she reviewed the records provided by the father and found no checks payable to the wife totaling $5,000 to cover the monthly support obligation under the August 2019 consent order. We take note that the father did not call any witnesses at the hearing and waived both opening and closing statements. A court need not deduct claimed child and spousal support payments where, as here, there is no proof that the payments were actually made (see Baumgardner v Baumgardner, 98 AD3d 929, 931 [2d Dept 2012]; Curran v Curran, 2 AD3d 391, 392 [2d Dept 2003]).
Contrary to the father's contention, the Support Magistrate did not abuse her discretion in declining to impute income to the mother. "A court is permitted to impute income to a party based [*3]on the party's earning capacity, as long as the court articulates the basis for imputation and the record evidence supports the calculations" (Yezzi v Small, 206 AD3d 1472, 1474 [3d Dept 2022] [internal quotation marks, brackets and citations omitted]; accord McGovern v McGovern, 218 AD3d 1067, 1069 [3d Dept 2023]). A court "is not bound by a party's account of his or her own finances, and where a party's account is not believable, the court is justified in finding a true or potential income higher than that claimed. The trial court is afforded considerable discretion in determining whether to impute income to a party, and the court's credibility determinations will be accorded deference on appeal" (McGovern v McGovern, 218 AD3d at 1069; accord Yezzi v Small, 206 AD3d at 1474 [internal quotation marks and citations omitted]).
During the fact-finding hearing, the mother revealed that she is raising the child as a single mom, explaining that the father has only met the child three times — during the first month after the child was born — and does not exercise any visitation. At the time of her testimony, the mother was working 30 hours per week as an attorney for the Rensselaer County Public Defender's office making approximately $52,000 annually. She is also a child's attorney through the assigned counsel program in Rensselaer County, but had only made $600 in that role as of the date of the fact-finding hearing. The mother testified that she has no opportunities for overtime pay in her current position and is unable to seek additional employment due to daycare constraints, noting that the child attends daycare three days per week. The maternal grandmother watches the child one of the remaining weekdays and the mother watches her the other. The Support Magistrate credited the mother's testimony regarding her work constraints, finding that she "clearly had to limit her ability to work" given the hurdles posed by being a single parent, emphasizing that she did not have "any hands-on assistance" from the father and that she "alone must take time [off] from work to care for the child when she is ill, or unable to attend day care due to closures." According appropriate deference to the Support Magistrate's credibility determinations, we readily find that the Support Magistrate properly exercised her discretion in declining to impute additional income to the mother (see Matter of Treglia v Varano, 222 AD3d 1299, 1302 [3d Dept 2023]; Rossiter v Rossiter, 56 AD3d 1011, 1012 [3d Dept 2008]).
Moreover, given the significant income disparity between the parties, the fact that the mother is the child's sole caretaker and that the father has a greater capacity to generate additional income, it was not — as the father claims — an abuse of discretion to award support beyond the statutory cap (see Matter of Yaroshevsky v Yaroshevsky, 219 AD3d 609, 612 [2d Dept 2023]). The Support Magistrate properly set forth her reasons for doing so utilizing the factors set forth [*4]in Family Ct Act § 413 (1) (f) and, notably, chose not to impose the maximum basic child support obligation she could have, reducing that amount by approximately $400 per month. The father's remaining contentions, including that the Support Magistrate erroneously credited the closing argument made by the mother's attorney as evidence and was biased against him, are not supported by the record.
Clark, J.P., Pritzker, Fisher and Powers, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: The father's paternity was established by an order of filiation.

Footnote 2: Specifically, the Support Magistrate calculated the father's 2020 adjusted gross annual income from W-2 wages to be $78,286.96 utilizing the numbers listed on his joint tax return with his wife. She then added an additional $91,687 in business income from the father's private law practice and $43,057 in undistributed income from 2020. We note that this amounts to $213,030 in income, not $200,075 as used by the Support Magistrate. It is unclear what other deductions the Support Magistrate made to get to this reduced number, but we note that the reduced amount benefits the father who, we should add, failed to disclose his 2021 personal income tax return.